23-2304

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

NEONODE SMARTPHONE LLC,

*Plaintiff - Appellant*

v.

SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendants - Appellees*

Appeal from the United States District Court for the Western District of Texas, Case No. 6:20-CV-00507-ADA, Judge Alan D Albright

# RESPONSE BRIEF OF DEFENDANTS-APPELLEES SAMSUNG ELECTRONICS CO., LTD AND SAMSUNG ELECTRONICS AMERICA, INC.

Stanley J. Panikowski
Tiffany C. Miller
DLA PIPER LLP (US)
4365 Executive Drive,
Suite 1100
San Diego, CA 92121
Tel: (858) 677-1400

Mark D. Fowler
DLA PIPER LLP (US)
3203 Hanover Street, Suite 100
Palo Alto, CA 94304
Tel: (650) 822-2000

Brian K. Erickson
DLA PIPER LLP (US)
303 Colorado Street,
Suite 3000
Austin, TX 78701
Tel: (512) 457-7059

Jessica L. Hannah
DLA PIPER LLP (US)
555 Mission St., Suite 2400
San Francisco, CA 94105
Tel: (415) 836-2500

*Attorneys for Defendants-Appellees Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

**Exemplary Claim of U.S. Patent No. 8,095,879**

1. A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

    a touch sensitive area in which a representation of a function is provided, wherein the representation consists of only one option for activating the function and wherein the function is activated by a multi-step operation comprising

    (i) an object touching the touch sensitive area at a location where the representation is provided and then

    (ii) the object gliding along the touch sensitive area away from the touched location, wherein the representation of the function is not relocated or duplicated during the gliding.

Appx0091 (6:45-59).

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-2304

**Short Case Caption** Neonode Smartphone LLC v. Samsung Electronics Co., Ltd.

**Filing Party/Entity** Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/05/2023

Signature: /s/ Stanley J. Panikowski

Name: Stanley J. Panikowski

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Samsung Electronics Co., Ltd. | | None |
| Samsung Electronics America, Inc. | | Samsung Electronics Co., Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| John M. Guaragna | Benjamin Mueller | |
| Erik R. Fuehrer | Susan Acquista | |
| Zachary Loney | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# Table of Contents

**Page**

I. STATEMENT OF RELATED CASES....1

II. STATEMENT OF THE ISSUES....1

III. INTRODUCTION....2

IV. STATEMENT OF THE CASE....4

A. The ’879 Patent....4

B. The “Only One Option” Term....8

1. The “Only One Option” Term Was Added To The Claims Eight Years After The Original Application Was Filed....8

2. Neonode Took Different Positions In Proceedings Related To The “Only One Option” Term....11

C. The “Gliding” Term....13

1. The “Gliding” Term Was Added To The Claims Six Years After The Original Application Was Filed....13

2. Neonode Tried To Draw Various Distinctions In Proceedings Related To The “Gliding” Term....15

D. Neonode Sued Samsung And The District Court Construed The Claims....15

V. SUMMARY OF ARGUMENT....17

VI. ARGUMENT....19

A. Standard Of Review....19

B. A Claim Is Invalid As Indefinite When It Fails To Inform A Skilled Artisan Of Its Scope With Reasonable Certainty....20

C. All Claims Of The ’879 Patent Are Invalid As Indefinite Because The “Only One Option” Term Fails To Inform A

**Table of Contents**
**(continued)**

**Page**

Skilled Artisan Of The Scope Of The Claims With Reasonable Certainty. ....................21

1. The Intrinsic Record Fails To Provide Reasonable Certainty As To The Meaning Of The "Only One Option" Term...........21

2. This Court Has Ruled In Similar Circumstances That Claims With Multiple Or Boundless Meanings Are Indefinite. ....................29

3. Neonode's Newly Proposed Construction Of The "Only One Option" Term Illustrates The Lack Of Reasonable Certainty. ....................33

D. Neonode's Flawed Criticisms Of The District Court's Opinion Are Misplaced. ....................40

1. The District Court Applied The Correct Legal Standards To The Intrinsic Record In Ruling The Claims Indefinite............40

2. The District Court Adequately Addressed Neonode's "Icon" Argument. ....................48

3. The District Court Properly Disregarded Neonode's Expert's Declaration. ....................50

E. Alternatively, The District Court's Judgment of Invalidity Should Be Affirmed Because The "Gliding" Term Is Indefinite. ......52

1. The Claims, Specification, And Prosecution History Fail To Inform A Skilled Artisan With Reasonable Certainty As To The Meaning Of The Term "Gliding." ....................54

2. Neonode's IPR Positions Aggravate The Lack Of Clarity Regarding The Meaning Of "Gliding." ....................57

3. The Record Does Not Support The District Court's Vague Construction Of "Gliding." ....................60

VII. CONCLUSION....................64

**Table of Authorities**

**Page(s)**

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017) ....................27, 29

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
359 F.3d 1367 (Fed. Cir. 2004) ....................42

*Bright Data Ltd. v. BI Sci. (2009) Ltd.*,
No. 2020-2118, 2023 WL 5605658 (Fed. Cir. Aug. 30, 2023) ....................32

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*,
35 F.4th 1345 (Fed. Cir. 2022) ....................47

*Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*,
838 F.3d 1224 (Fed. Cir. 2016) ....................44, 45

*Cuozzo Speed Techs., LLC v. Lee*,
579 U.S. 261 (2016) ....................64

*CUPP Computing AS v. Trend Micro Inc.*,
53 F.4th 1376 (Fed. Cir. 2022) ....................27

*Droplets, Inc. v. E*TRADE Bank*,
887 F.3d 1309 (Fed. Cir. 2018) ....................20

*Eidos Display, LLC v. AU Optronics Corp.*,
779 F.3d 1360 (Fed. Cir. 2015) ....................51

*Gen. Elec. Co. v. Wabash Appliance Corp.*,
304 U.S. 364 (1938) ....................59

*Grace Instruments Indus., LLC v. Chandler Instruments Co., LLC*,
57 F.4th 1001 (Fed. Cir. 2023) ....................60

*HZNP Medicines LLC v. Actavis Labs. UT, Inc.*,
940 F.3d 680 (Fed. Cir. 2019) ....................20, 32, 33, 59

*Infinity Comput. Prods, Inc. v. Oki Data Ams., Inc.*,
987 F.3d 1053 (Fed. Cir. 2021) ....................*passim*

**Table of Authorities**
**(continued)**

**Page(s)**


*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001) ....................33

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014) ....................20, 21, 47, 59

*Jaffke v. Dunham*,
352 U.S. 280 (1957)....................52

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
800 F.3d 1366 (Fed. Cir. 2015) ....................16, 20, 46, 47

*Medrad, Inc. v. MRI Devices Corp.*,
401 F.3d 1313 (Fed. Cir. 2005) ....................46

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
133 F.3d 1473 (Fed. Cir. 1998) ....................60

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014)....................*passim*

*Nevro Corp. v. Boston Sci. Corp.,*
955 F.3d 35 (Fed. Cir. 2020) ....................47

*Nichia Corp. v. DSS, Inc.*,
No. 22-1704, 2023 WL 7211097 (Fed. Cir. Nov. 2, 2023)....................64

*O2 Micro Int'l Ltd. v. Beyond Innovation Techs. Co., Ltd.*,
521 F.3d 1351 (Fed. Cir. 2008) ....................34

*Omega Patents, LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ....................19

*One-E-Way, Inc. v. Int'l Trade Comm'n*,
859 F.3d 1059 (Fed. Cir. 2017) ....................41

*Orion Tech., Inc. v. United States*,
704 F.3d 1344 (Fed. Cir. 2013) ....................20

**Table of Authorities**
**(continued)**

**Page(s)**

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................41, 45

*Primos, Inc. v. Hunter's Specialties, Inc.*,
451 F.3d 841 (Fed. Cir. 2006) ....................41, 42

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
987 F.3d 1358 (Fed. Cir. 2021) ....................19

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
789 F.3d 1335 (Fed. Cir. 2015) ....................*passim*

*Tex. Advanced Optoelectronic Sols. v. Renesas Elecs. Am., Inc.*,
895 F.3d 1304 (Fed. Cir. 2018) ....................52

*TVnGO Ltd. (BVI) v. LG Elecs. Inc.*,
861 F. App'x 453 (Fed. Cir. 2021) ....................63

*University of Massachusetts v. L'Oreal S.A.,*
36 F.4th 1374 (Fed. Cir 2022) ....................45

*Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*,
366 F.3d 1311 (Fed. Cir. 2004) ....................61

*Vehicular Techs. Corp. v. Titan Wheel Int'l*,
212 F.3d 1377 (Fed. Cir. 2000) ....................36

**Statutes**

28 U.S.C. § 2111 ....................52

35 U.S.C. § 112, ¶ 2 ....................2, 17, 52, 64

35 U.S.C. § 311(b) ....................64

## I. STATEMENT OF RELATED CASES

No other appeal in or from this civil action was previously before this or any other appellate court. The following pending cases or proceedings may directly affect or be directly affected by this Court's decision in this appeal:

- *Google LLC v. Neonode Smartphone LLC*, No. 23-1638 (Fed. Cir.);
- *Samsung Elecs. Co., Ltd., et al., v. Neonode Smartphone LLC*, No. 23-1464 (Fed. Cir.);
- *Neonode Smartphone LLC v. Apple Inc.*, No. 3:21-cv-08872 (N.D. Cal.);
- *Neonode Smartphone LLC v. Samsung Elecs. Co., Ltd.*, et al., No. 22-2134 (Fed. Cir.); and
- *Neonode Smartphone LLC v. Samsung Elecs. Co. Ltd. et al.*, No. 6:23-cv-00204 (W.D. Tex.).

## II. STATEMENT OF THE ISSUES

1. Did the district court correctly rule that the claims of the '879 patent are invalid as indefinite because a skilled artisan in 2002 could not understand with reasonable certainty the meaning of the claim term "the representation consists of only one option for activating the function"?

2. As an independent alternative ground for affirmance, does the claim term "gliding" render the claims of the '879 patent invalid as indefinite because a skilled artisan in 2002 could not understand its scope with reasonable certainty?

## III. INTRODUCTION

In this case, the district court correctly ruled that all claims of U.S. Patent No. 8,095,879 ("the '879 patent") are invalid as indefinite under 35 U.S.C. § 112, ¶ 2. Two separate claim terms recited in claim 1, the only independent claim of the '879 patent, fail to apprise a skilled artisan as of 2002, with reasonable certainty, of the scope of the claims. These terms are (1) the "representation consists of only one option for activating the function" (the "only one option" term) and (2) the "gliding" term. Each of these terms separately and independently renders all asserted claims invalid as indefinite.

First, the "only one option" term is susceptible of conflicting meanings from which a skilled artisan cannot make an informed and confident choice. The claim language (to which the "only one option" term was added eight years after the original patent application was filed) and specification (in which the word "option" does not appear) provide no guidance. The prosecution history fares no better. The excerpts from the prosecution history on which Neonode relies are themselves ambiguous, and Neonode took contradictory positions in IPR proceedings that only

aggravated the indefiniteness of the claims. Neonode's positions continued to mutate in the district court and even on appeal, where Neonode has proposed a construction that differs from its mere "Plain meaning" proposal in the district court. Neonode's proposed appellate construction lacks support in the intrinsic record and further highlights the indefiniteness of the claims. The district court therefore correctly ruled that the claims are indefinite based on the "only one option" term. The judgment should be affirmed on this basis alone.

Second, the "gliding" term too is indefinite. Like the "only one option" term, "gliding" appears only in the claim language, and neither the word "gliding" nor any form of it appears in the specification. "Gliding," in fact, was added to the claims six years after the application was filed. Further, the prosecution history sheds no light on the boundaries of this vague and undefined term. Neonode's positions in the related IPR proceedings both underscore and amplify the "gliding" term's indefiniteness. The district court nonetheless ruled "gliding" to be not indefinite and adopted a construction of "plain and ordinary meaning, not including dragging, flicking, or a drag and drop operation." With no objective parameters to guide these distinctions, the negative limitation in this construction further obscures the contours of what "gliding" may be. Thus, the "gliding" term supplies a wholly independent and alternative ground to affirm the district court's judgment of invalidity.

Accordingly, the district court's judgment should be affirmed.

## IV. STATEMENT OF THE CASE

### A. The ’879 Patent.

The ’879 patent stems from an application filed on December 10, 2002. Appx0083. It purports to describe then-existing user interface technology for mobile devices. Appx0089 (1:22-43). As the patent states, “mobile handheld computers,” “mobile phones,” “personal digital assistants,” and “laptop computers” were all well-known at the time the application was filed in 2002. Appx0089 (1:24-33). Laptops were getting smaller. Appx0089 (1:31-33). Mobile phones and PDAs were “merging into a single unit.” Appx0089 (1:27-30). As a result, according to the patent, there was a need for a suitable user interface for a small handheld computer unit. *See generally* Appx0089 (1:45-61). A significant portion of the patent’s specification describes either a user interface (*e.g.*, a menu area and a display area) or functions that may be activated on the device (*e.g.*, a keyboard and a file manager). Appx0090 (3:51-54, 4:4-6); *see generally* Appx0083-0091.

The specification describes the user interface as being “divided into a menu area 2 and a display area 3,” where active applications are presented “on top of any other application.” Appx0090 (3:51-54, 59-61). And “menu 2 is adapted to present a representation of a first 21, second 22, and third 23 predefined function.” Appx0090 (4:1-3). The predefined functions, 21, 22, and 23, are illustrated in Figure 1, reproduced below.




Fig. 1.

Appx0085 (Figure 1). The specification states that the first function is a general application dependent function. Appx0090 (4:4-6). The second function is a keyboard function. Appx0090 (4:4-6). The third function is a task and file manager. Appx0090 (4:4-6).

Figure 3 illustrates the user interface upon activation of predefined function 21. Appx0085 (Figure 3). Upon that activation, "display area 3 is adapted to display icons 211, 212, 213, 214, 215, 216 representing services or functions depending on the current active application." Appx0090 (4:13-16).




*Fig. 3.*

Appx0085 (Figure 3). One of the display icons, represented by icon 211 in Figure 3, is always a "help" icon, regardless of application. Appx0090 (4:16-18). The specification further describes that "[i]f for instance the active application handles a picture, then the icons that are shown when the first function is activated can be services such as 'save to disk,' 'send as SMS,' or 'delete' and they can be settings such as 'resolution,' 'colour,' or 'brightness.'" Appx0090 (4:24-28). The patent similarly describes what happens upon activation of predefined functions 22 and 23. Appx0090 (4:36-62, 63-5:2); Appx0085-0086 (Figures 5, 6).

The specification describes the "movement" of an object along the touch-sensitive area to activate a function with reference to Figure 2:




*Fig. 2.*

Appx0085 (Figure 2); Appx0090 (3:24-25, 4:7-12). The specification states that "touch sensitive area 1 detects a movement of an object 4 with its starting point A within the representation of a function on the menu area 2 and with a direction B from the menu area 2 to the display area 3." Appx0090 (4:7-12).

Claim 1 is the sole independent claim of the ’879 patent and is reproduced below.

> A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:
>
> a touch sensitive area in which a representation of a function is provided, wherein *the representation consists of only one option for activating the function* and wherein the function is activated by a multi-step operation comprising
>
> (i) an object touching the touch sensitive area at a location where the representation is provided and then
>
> (ii) the object *gliding* along the touch sensitive area away from the touched location, wherein the representation of the function is not relocated or duplicated during the *gliding*.

Appx0091 (6:45-59) (emphases added to claim terms relevant to this appeal). The “only one option” term does not appear in the specification. Appx0083-0091. Nor does the word “gliding” or any form of it appear in the specification. Appx0083-0091.

### B. The “Only One Option” Term.

#### 1. The “Only One Option” Term Was Added To The Claims Eight Years After The Original Application Was Filed.

The applicant added the “only one option” term to the claims in 2010—eight years after filing the application that resulted in the ’879 patent. Appx0616-0617.

In particular, the applicant added the phrase "wherein the representation consists of only one option for activating the function" to overcome a rejection over cited prior art, U.S. Patent Pub. No. 2002/0027549 ("Hirshberg"). Appx0617-0626.

In the remarks accompanying the amendment, the applicant pointed to Hirshberg's disclosure of a "multi-function" mode where "[t]o enter a character, a user first touches a key representing several characters, and then drags his finger in a specific direction to select one of the several characters." Appx0623. The applicant contrasted this mode with Hirshberg's "single-function mode wherein a single function is elected on contact with a given key, independent of the direction of motion." Appx0624. The applicant then tried to distinguish the claimed invention on the ground that "the claimed invention <u>uses a multi-step touch-and-glide operation for representations that consist of only one option for activating a function</u>." Appx0624 (emphasis in original).

The applicant argued that support for this new limitation existed in the original specification at least in representations 21, 22, and 23 in Figure 1, reproduced below. Appx0625.




Fig. 1.

Appx0085 (Figure 1). The specification of the ’879 patent describes representations 21, 22, and 23 as “predefined function[s].” Appx0090 (4:1-3); *see also* Appx0090 (4:4-6, 4:12-15, 4:51-62).

The applicant asserted that each of representations 21, 22, and 23, of Figure 1 “<u>consists of only one</u> option for activating its corresponding function.” Appx0625 (emphasis in original). The applicant stated that element 21 consists of the one option of “displaying icons . . . for a currently active application,” element 22 consists of the one option of “opening a keypad and text window,” and element 23

consists of the one option of "opening a list of computer system applications and files." Appx0625. The applicant further stated that "each of these one-option elements is activated by a multi-step touch-and-glide operation." Appx0625.

#### 2. Neonode Took Different Positions In Proceedings Related To The "Only One Option" Term.

Throughout an *inter partes* review ("IPR") of the '879 patent initiated by Google ("the Google IPR"), Neonode took differing positions on the meaning of the "only one option" term. Neonode first argued that the "representation presents the user *with one option of what to activate*." Appx0664 (emphasis added). But later in the same proceeding, Neonode argued that "we are *not* arguing that the representation must only have one function." Appx0744 (emphasis added). Neonode then argued that "a representation can at different times have multiple functions." Appx0745. In almost the next breath, Neonode pivoted again, this time arguing that "at any given time, the user is given only one option *in terms of what gesture to put in and what action to take*." Appx0745 (emphasis added). But in its Patent Owner Response, Neonode had taken the opposite position that the claims do *not* "require that each function associated with the representation of the function can be activated only by one gesture." Appx0711.

Later, in its *Markman* briefing below, Neonode argued that an "option" may be "activated by the user." Appx1065. As the district court noted, Neonode also argued that the "only one option" language referred to "a representation that

**presents only one option** for an activatable function at a given time." Appx0030 (emphasis in original). Then at the *Markman* hearing, Neonode argued that Figure 3, reproduced below, shows the "option" as "the single app that is currently active." Appx0043.




Fig. 3.

Appx0085 (Figure 3). The description of Figure 3 in the specification states that "if the first function 21 is activated, then the display area 3 is adapted to display icons 211, 212, 213, 214, 215, 216 representing services or functions depending on the current active application." Appx0090 (4:13-16).

### C. The "Gliding" Term.

#### 1. The "Gliding" Term Was Added To The Claims Six Years After The Original Application Was Filed.

Turning to the "gliding" term, the applicant added the term "gliding" to the claims by amendment in 2008—six years after the filing of the original application. Appx0420. In the remarks accompanying the amendment, the applicant stated that "[t]he subject claimed invention teaches 'rubbing', 'touch-and-glide' movements to operate a user interface, whereby the thumb touches a touch sensitive screen and rubs, or glides, along the screen without lifting the thumb." Appx0440. The applicant also compared the "gliding" function to "sliding." Appx0441.

In response to a later office action rejecting the claims, the applicant argued that the claimed invention differed from the cited prior art because in the claimed invention a function is activated only upon a touch-and-glide operation, whereas in the prior art the function is activated upon a touch that meets a certain pressure threshold. Appx0952. The applicant illustrated this distinction as follows:



Function activation operation of claimed invention vs. that of Hoshino

Appx0952. The applicant pointed to Figure 2, reproduced below, and its related text to support the amendment to add the term "gliding" to the claims. Appx0954.




Fig. 2.

Appx0085 (Figure 2).

The specification of the ’879 patent describes Figure 2 as follows:

> FIG. 2 shows that any one of these three functions 21, 22, 23 can be activated when the touch sensitive area 1 detects a movement of an object 4 with its starting point A within the representation of a function on the menu area 2 and with a direction B from the menu area 2 to the display area 3.

Appx0090 (4:7-11). Indeed, to support this amendment, the applicant pointed only to Figure 2, this passage, and a similar portion of the abstract that refers to the "movement of an object" to support the addition of "gliding" to the claims.

#### 2. Neonode Tried To Draw Various Distinctions In Proceedings Related To The "Gliding" Term.

During IPR proceedings, Neonode addressed the "gliding" term in various ways. In an IPR initiated by Samsung and Apple, ("the Samsung IPR"), Neonode argued that "gliding" differs from "dragging." Appx2456-2458. In the Google IPR, Neonode argued that "flick" and "insert" gestures are not "gliding." Appx0694-0709; Appx0740-0742. Also in the Google IPR, Neonode's expert equated "gliding" with "swiping," a term used by a promotional video for the assignee's N2 mobile phone that the applicant referenced during prosecution. Appx0707; Appx0692-0693 (discussing the promotional video).

### D. Neonode Sued Samsung And The District Court Construed The Claims.

Neonode sued Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") in June of 2020 in the Western District of Texas alleging infringement of two patents: the '879 patent and 8,812,993 ("the '993 patent"). Appx0093-0121.

The district court severed Neonode's claim for infringement of the '993 patent into a separate case after the Patent Trial and Appeal Board ("PTAB") found all

asserted claims of that patent unpatentable. Appx0080. The district court then stayed that case pending resolution Neonode's appeal from the final written decision, which is currently pending before this Court and related to this appeal: *Neonode Smartphone LLC v. Samsung Elecs. Co., Ltd., et al.*, No. 22-2134.

In the remaining case involving the '879 patent, the district court took up the parties' claim construction disputes. First, the district court agreed with Samsung and ruled that the "only one option" term rendered claim 1 of the '879 patent invalid as indefinite, Appx0011, stating, in part: "it is unclear to a POSITA (or this Court) whether 'option' refers to a graphical user interface element, a gesture to activate a function, or even a function itself," Appx0030-0031. The district court further reasoned that "as explained above in the summary of Samsung's argument, if the term 'option' does indeed refer to gestures or functions (rather than 'icons' or graphical user interface elements), then there are three equally competing interpretations of what this claim term means." Appx0031. As a result, the district court concluded that "because there is 'no informed and confident choice [that] is available among the[se] contending definitions'; the Court must find that the claim term is indefinite." Appx0031 (quoting *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) (alterations in original).

Next, the district court rejected Samsung's argument that the "gliding" term is indefinite and adopted a modified version of Neonode's proposed construction.

In particular, the district court stated that the "gliding" term was used consistently through the intrinsic record according to the general dictionary definitions provided by Neonode. Appx0034. The district court concluded that the examiner and PTAB "came to understand the differences" among gliding, flicking, dragging, and dragging-and-dropping. Appx0034. The district court also stated that "Neonode has sufficiently distinguished 'gliding' from 'dragging' to render it not indefinite." Appx0034. As such, the district court construed "gliding" to have its "plain and ordinary meaning, not including dragging, flicking, or a drag and drop operation." Appx0011.

Because the "only one option" term appears in the only independent claim of the '879 patent, the district court ruled all claims invalid as indefinite under 35 U.S.C. § 112, ¶ 2 and entered final judgment in favor of Samsung. Appx0035. Neonode appealed. Appx3554-3557.

## V. SUMMARY OF ARGUMENT

The district court's ruling invalidating the '879 patent should be affirmed. The district court correctly ruled that the claims of the '879 patent are invalid as indefinite because a skilled artisan cannot determine the meaning of the "only one option" term with reasonable certainty. If this Court agrees, it need not go any further. The "gliding" term, in any case, supplies an independent, alternative basis

to affirm the district court's judgment because the "gliding" term too renders the claims indefinite.

First, as the district court correctly ruled, the "only one option" term fails to inform a skilled artisan of the bounds of claim 1 with reasonable certainty. The claim language provides no guidance. The specification does not define the term in any way. Nor does the specification even mention the term. The applicant's and Neonode's inconsistent usage of the "only one option" term throughout both the original prosecution history and IPR proceedings exacerbates the lack of reasonable certainty as to what "only one option" may be. The district court identified at least three possible meanings of the term, analyzed them in light of the intrinsic record, and correctly concluded that a skilled artisan would not understand *any* possible meaning of the term with reasonable certainty. Neonode's newly proposed construction for "only one option" does not save the term, and, in any event, the intrinsic evidence does not support the construction. Accordingly, the district court correctly ruled that the claims are invalid as indefinite.

Second, the claims are invalid as indefinite for yet another independent reason: the intrinsic record fails to inform a skilled artisan of the scope of the "gliding" term with reasonable certainty. "Gliding" was added by amendment after years of prosecution, and the word appears nowhere in the specification. Nor does the prosecution history provide sufficient guidance on its scope. The applicant's and

Neonode's various statements during the original prosecution and the IPRs also reinforce the indefiniteness of the term. The district court construed "gliding" with a negative limitation—excluding certain movements as *not* constituting a "glide." But the district court's construction fails to provide adequate guidance as to the scope of "gliding," and a skilled artisan is left with no way to identify the distinctions between "gliding" and the other identified gestures with any reasonable certainty. Nor can sufficient guidance be found in the record. The district court's final judgment thus can be affirmed on this basis as well.

Accordingly, the district court's judgment invalidating the claims of the '879 patent as indefinite should be affirmed.

## VI. ARGUMENT

### A. Standard Of Review

This Court reviews *de novo* the ultimate legal conclusion of invalidity based on indefiniteness. *See Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1365 (Fed. Cir. 2021). "The internal coherence and context assessment of the patent [to determine indefiniteness], and whether it conveys claim meaning with reasonable certainty, are questions of law." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015).

This Court also "review[s] judgments, not opinions." *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1369 (Fed. Cir. 2021) (internal quotations omitted)

(quoting *Droplets, Inc. v. E*TRADE Bank*, 887 F.3d 1309, 1321 (Fed. Cir. 2018)). As such, this Court "can affirm a decision of the trial court upon any ground supported by the record." *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1350 (Fed. Cir. 2013).

### B. A Claim Is Invalid As Indefinite When It Fails To Inform A Skilled Artisan Of Its Scope With Reasonable Certainty.

"[A] patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909 (2014) (internal quotations and citations omitted). "Otherwise there would be a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." *Id.* at 909-910. Thus, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 901. The "reasonable certainty" standard "mandates clarity, while recognizing that absolute precision is unattainable." *Id.* at 910.

Applying *Nautilus*, this Court has held that "a claim is indefinite if its language 'might mean several different things and no informed and confident choice is available among the contending definitions.'" *Media Rights*, 800 F.3d at 1371; *see also Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (same); *HZNP Medicines LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680, 698 (Fed.

Cir. 2019) (same). "[A] patent does not satisfy the definiteness requirement of § 112 merely because 'a court can ascribe *some* meaning to a patent's claims.'" *Interval Licensing*, 766 F.3d at 1371 (emphasis original) (quoting *Nautilus*, 572 U.S. at 911). Rather, "[t]he claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art." *Id.* (quoting *Nautilus*, 572 U.S. at 911 n.8).

### C. All Claims Of The '879 Patent Are Invalid As Indefinite Because The "Only One Option" Term Fails To Inform A Skilled Artisan Of The Scope Of The Claims With Reasonable Certainty.

Because the intrinsic record fails to provide adequate guidance as to the contours of the claimed "only one option," that term as recited in claim 1 of the '879 patent renders the claims indefinite. While absolute precision is not required, skilled artisans must be able to understand the scope of the claims with reasonable certainty. The '879 patent fails this test.

#### 1. The Intrinsic Record Fails To Provide Reasonable Certainty As To The Meaning Of The "Only One Option" Term.

There is no coherent meaning for the "only one option" term that is consistent with the intrinsic record. While "option" may be a commonly used term in normal parlance, it is meaningless without context. But the context in this case is of no help.

Beginning with the claim language, claim 1 requires a "computer readable medium" that, among other things, includes "a touch sensitive area in which a representation of a function is provided." Appx0091. Claim 1 further requires that

"the representation consists of *only one option* for activating the function" and "the function is activated by a multi-step operation." Appx0091 (emphasis added). It then goes on to describe the multi-step operation. Appx0091. But the claim language does not convey with any reasonable certainty whether the "only one option" refers to the "multi-step operation," a "function," or something else. Appx0030-0031 (the district court concluding that "it is unclear to a POSITA (or this Court) whether 'option' refers to a graphical user interface element, a gesture to activate a function, or even a function itself . . . .").

As the district court correctly determined, the "only one option" term has at least three possible and conflicting meanings. *See* Appx0024-0025; Appx0029-0031. The first meaning could be that the representation (R) represents a single function ($f_1$) and there is only one input gesture ($g_1$) to activate that function. The second meaning is that the representation (R) may represent multiple functions ($f_1$, $f_2$) but there is only a single input gesture ($g_1$) to activate one function ($f_1$), but a different input gesture ($g_2$) activates a second function ($f_2$). The third meaning could be that the representation (R) represents a single function ($f_1$), and the claim allows multiple input gestures ($g_1$, $g_2$) to activate function ($f_1$). The diagram below, used by Samsung in district court briefing, illustrates these three conflicting meanings.




Appx0211. No informed and confident choice exists among these exemplary possible meanings. *See* Appx0024-0025; Appx0029-0031.

Continuing down that path, on the one hand it makes little sense to equate "option" with "function" when the "only one option" is "*for activating* the function." Yet, the notion—seemingly embraced by Neonode—that a "representation of a function" also "consists of" a function is hardly intelligible. If anything, the language "option for activating the function" points toward the "option" referring to a gesture, especially where the next claim limitation begins "wherein the function *is activated by* a multi-step operation." But even Neonode concedes that the concept of the "option" as a gesture is difficult to square with the preface "representation consists of." *See* Opening Brief of Appellant Neonode Smartphone LLC, Dkt. 17 ("OB") at 31-33. And Neonode has now disavowed the position that the "only one option" is a gesture—even though Neonode embraced it before, Appx0745. In short, the claim language lacks guidance as to what the "only one option" term may mean to a skilled artisan.

Likewise, the specification of the ’879 patent does not help because the word “option”—and therefore the larger claim term in which it appears—is absent from the specification. *See* Appx0083-0091. The specification does mention “the activation of a function” with reference to Figure 2, which depicts a gesture. Appx0090 (3:24-25); Appx0085 (Figure 2); *see also* Appx0090 (4:7-11) (“FIG. 2 shows that any one of these three functions 21, 22, 23 can be activated when the touch sensitive area 1 detects a movement of an object 4 . . . .”). But, again, the notion of “option” referring to a gesture conflicts with other parts of the claim term, like “representation . . . consists of.” Thus, the specification does not provide adequate guidance as to what the term means.

Turning to the prosecution history of the ’879 patent, the “only one option” term was added during prosecution to overcome a rejection by the examiner. The applicant distinguished the prior art, Hirshberg, on the basis that Hirshberg disclosed that a single function was activated via a touch operation on a multi-function key. Appx0623-0624. The applicant argued that the claimed invention, however, “<u>uses a multi-step touch-and-glide operation for representations that consist of only one option for activating a function</u>.” Appx0624 (emphasis in original).

But the applicant then provided an ever-changing description of the "option." The applicant identified as support for the amendment at least representations 21, 22, and 23 in Figure 1, which is reproduced below.



Fig. 1.

Appx0085 (Figure 1). The specification describes representations 21, 22, and 23 as "predefined functions." Appx0090 (4:1-3); *see also* Appx0090 (4:4-6, 4:12-15, 4:51-62). The applicant explained that element 21 consists of "displaying icons . . . for a currently active application," element 22 consists of "opening a keypad and text window," and element 23 consists of "opening a list of computer system

applications and files." Appx0625. And the applicant closed by noting that "each of these one-option elements is activated by a multi-step touch-and-glide operation." Appx0625. These remarks can be read to imply the "option" is a function.

Yet, the applicant also noted that each of representation 21, 22, and 23 of Figure 1 "consists of only one option for activating its corresponding function." Appx0625 (emphasis in original). The applicant's reference to the representation's "corresponding" function indicates that the function is fixed in relation to the representation, and thus implies the "option" is not a function. Based on this statement by the applicant, the "option for activating [the representation's] corresponding function" would seem to refer to a gesture or something else besides a function.

Then, immediately after these statements indicating that the "option" cannot a function, the applicant pivots back to functions apparently being the "option":

> Indeed, element 21 consists of the one option of displaying icons as appropriate for a currently active application, as described at par. [0048] and shown in FIG. 3 of the original specification. Element 22 consists of the one option of opening a keypad and text window, as described at par. [0052] and shown in FIG. 5 of the original specification. Element 23 consists of the one option of opening a list of computer system applications and files, as described at par. [0058] and shown in FIG. 6 of the original specification.

Appx0625. Adding to the confusion, the applicant closes by noting that "each of these one-option elements is activated by a multi-step touch-and-glide operation." Appx0625.

Intensifying the lack of reasonable certainty, Neonode made inconsistent and conflicting statements during the IPRs. A patentee's statements made during IPR are part of the intrinsic record and relevant to claim construction in later proceedings. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359-1361 (Fed. Cir. 2017); *CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1383 (Fed. Cir. 2022). Holding a patentee to statements it made during IPR "ensure[s] that claims are not argued by the patentee one way in order to maintain [the claims'] patentability and in a different way against accused infringers." *CUPP Computing*, 53 F.4th at 1383 (Fed. Cir. 2022) (quoting *Aylus*, 856 F.3d at 1355, 1360) (internal quotations omitted). Moreover, "[i]ndefiniteness may result from inconsistent prosecution history statements where the claim language and specification on their own leave an uncertainty that, if unresolved, would produce indefiniteness." *Infinity Comput. Prods, Inc. v. Oki Data Ams., Inc.*, 987 F.3d 1053, 1059 (Fed. Cir. 2021) (affirming conclusion of indefiniteness where patentee made inconsistent statements during prosecution, including reexamination proceedings). Even "a single contradictory statement" may be "sufficient" for indefiniteness, and the Court "hold[s] patentees

even to erroneous prosecution statements." *Id.* at 1062 (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1344-45 (Fed. Cir. 2015)).

Here, Neonode has taken conflicting positions during IPR proceedings on the '879 patent that further muddy the waters regarding the "only one option" term. For example, Neonode has argued that the "option" is a gesture. *See* Appx0709 ("Robertson's different gestures provide the user with several options for activating the function. Thus, it fails to meet the "one option" limitation."); Appx0745 ("The point is, at any given time, the user is given only one option in terms of what gesture to put in and what action to take."); Appx0745 ("So you don't have to memorize 20 different gestures . . . It's a simple one-option activation. You swipe, the device activates what it activates."). Yet, Neonode has also expressly disavowed the notion that the "option" is a gesture, whether one or more. Appx0711 ("[It is incorrect to] interpret the one-option limitation to require that each function associated with the representation of the function can be activated only by one gesture."); *see also* Appx0740 ("We are not proposing that the representation of a function can only be activated with one gesture."); *see generally* OB 36-38, 39 ("Even if 'only one option' referred to a gesture (which it does not), . . . .").

Neonode has also argued inconsistently that the "option" is a function. *See* Appx0664 ("[T]he representation presents the user with one option of what to activate."); Appx0711-0712 ("Robertson . . . provides the user with multiple options

to choose from in term of what to activate in the key depending on the input gesture.”). Neonode has also argued that the “option” is somehow defined with respect to the representation of a function. Appx0711 (“Thus, the Applicant required that there be only a single option with respect to the representation of the function regardless of the direction of ‘gliding . . . away.’”).

Already lacking guidance in the claims and specification, Neonode’s contradictory statements in the Google IPR add to the prosecution history’s ambiguity. Applying this Court’s precedent, these contradictory statements cement the indefiniteness of the claims. *See Infinity*, 987 F.3d at 1059; *Teva*, 789 F.3d at 1344-45; *Aylus*, 856 F.3d at 1359-61. As a result, the judgment should be affirmed.

**2. This Court Has Ruled In Similar Circumstances That Claims With Multiple Or Boundless Meanings Are Indefinite.**

This Court has held invalid as indefinite patent claims that suffer from infirmities like the claims of the ’879 patent do here. In *Infinity Comput. Prods, Inc. v. Oki Data Ams., Inc.*, the district court in that case similarly held invalid as indefinite the relevant claims of the asserted patents. 987 F.3d at 1062. There, the asserted patents claimed using a fax machine as a printer or scanner for a personal computer. *Id.* at 1054. The indefiniteness issues centered on the connection between the fax machine and the computer, which the claims termed a “passive link.” *Id.* As here, the term “passive link” did not appear in the specifications or original application for the asserted patents. *Id.* at 1054. Also as here, the applicant

introduced the term at issue during prosecution to distinguish a prior art reference. *Id.* at 1056. And again, as here, the patentee took conflicting positions during various proceedings related to the patent—in that case, the conflicting positions came during an *ex parte* reexamination proceeding. *Id.* at 1057-58. The district court ruled that the claims were invalid as indefinite. The district court found that the patentee "had taken materially inconsistent positions regarding the extent of the claimed 'passive link'" during prosecution to overcome prior art and thereafter during the *ex parte* reexamination proceeding. *Id.* at 1058-59.

This Court affirmed. Noting that "[i]ndefiniteness may result from inconsistent prosecution history statements where the claim language and specification on their own leave an uncertainty that, if unresolved, would produce indefiniteness," *id.* at 1059, the Court made clear that the positions Infinity advanced during the two proceedings could not be reconciled, *id.* at 1060. And holding Infinity to both positions would result in a "flat contradiction, providing no notice to the public of what is still open to them." *Id.* (internal quotations omitted). Therefore, the Court affirmed the conclusion of invalidity based on indefiniteness because the term "passive link" failed to inform with reasonable certainty a skilled artisan of the bounds of the claim.

This Court in *Infinity* relied upon *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335 (Fed. Cir. 2015), which also held certain claims indefinite.

In *Teva*, the asserted patents claimed a method of making a product called copolymer–1. *Id.* at 1338. The indefiniteness issues centered on the term "molecular weight," which the parties agreed could refer to any of three different measures that are calculated in different ways and that typically yield materially different results. *Id.* at 1341. And during prosecution of related applications, the patentee defined the term in different ways to overcome a rejection. *Id.* at 1343-44. This Court summarized as follows:

> [I]t is undisputed that "molecular weight" or average molecular weight can be ascertained by any of three possible measures: Mp, Mn, and Mw. The claims do not indicate which measure to use. The specification never defines molecular weight or even mentions Mp, Mw, or Mn. And the term "average molecular weight" does not have a plain meaning to one of skill in the art.

*Id.* at 1344-45. Thus, this Court held the claims invalid as indefinite. *Id.*

As in both *Infinity* and *Teva*, the meaning of the term "option" as used in the '879 patent and throughout the intrinsic record lacks coherence, and a skilled artisan could not be reasonably certain as to the bounds of the claims. And as in *Infinity*, the term "option" in the '879 patent appears in neither the specification nor the original application. *See generally* Appx0083-0091. Indeed, as the district court noted, the specification refers to the claimed "representation" of the functions which can be activated, but neither the representation, nor the option, are ever described. Appx0029. This leaves open the possibility that the "option" could be any number

of things, including, but not limited to a gesture, function, or icon. Further compounding the problem, if the "option" is a gesture or function, the claimed "option" could have any one of at least three competing meanings. *See* section V(B)(2), *supra*. While Neonode spends many pages arguing why none of these three meanings is correct, OB 26-42, Neonode still fails to identify the claimed "only one option"—much less show how a skilled artisan could make an informed and confident choice among the various possible meanings. Thus, "there is no reasonable certainty about how to harmonize [some] understanding of the [claim language]." *Bright Data Ltd. v. BI Sci. (2009) Ltd.*, No. 2020-2118, 2023 WL 5605658, at *7 (Fed. Cir. Aug. 30, 2023) (nonprecedential). Without reasonable certainty regarding the scope of the claims, the claims are invalid as indefinite.

Further, in *HZNP Meds. LLC v. Actavis Labs. UT, Inc.*, the claim term "impurity A" was held to render the claims indefinite in part because the specification provided "no clue' as to the identity of "impurity A." 940 F.3d 680, 691 (Fed. Cir. 2019). There, the patent owner argued that "a POSITA would understand the term to mean 'USP Related Diclofenac Compound A.' ('USP Compound A')." *Id.* at 689. This Court disagreed, holding that the claims "do not make clear that 'impurity A' refers to an impurity of diclofenac sodium." *Id.* It was also "undisputed that the written description contains no references to USP Compound A or its chemical name," and even the patent owner had not cited

to "any part of the specification, the claims, or the prosecution history that defines or directly connects 'impurity A' to USP Compound A." *Id.* This Court held that a single reference to "impurity A" in "Example 6" found in the specification provided "no clue as to the identity of 'impurity A,'" and patent owner's expert's opinion relying on "Example 6" was wrong because the specification lacked details needed to support the assumptions being made in the opinion. *Id.* at 691. Thus, this Court affirmed the district court's ruling that the claims were invalid as indefinite. *Id.*

Like *HZNP*, the intrinsic evidence here provides "no clue" as to the identity of the "only one option." And just like this Court in *HZNP*, the district court naturally found the term's absence from the specification to be instructive. Appx0029-0031. This absence is not surprising because the term was added to the claims years after the original application was filed. *HZNP* thus supports the district court's conclusion that the "only one option" term renders the claims invalid as indefinite.

**3. Neonode's Newly Proposed Construction Of The "Only One Option" Term Illustrates The Lack Of Reasonable Certainty.**

As a threshold matter, Neonode proposes a construction here that it did not propose to the district court. Therefore, this new proposed construction is forfeited. *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001) (surveying cases where this Court did not allow a party to present a new proposed

claim construction on appeal). Neonode proposed only "Plain meaning" in the district court. *See* Appx3551 (Joint Claim Construction Statement); Appx1059 (Neonode's *Markman* response brief). While Neonode deployed the words of its appellate construction as part of its *argument* in support of a "plain meaning" construction, *see, e.g.*, Appx1059, the construction it asked the district court to adopt was simply "Plain meaning," *see, e.g.*, Appx1059; Appx3551.

Forfeiture aside, the intrinsic record does not support Neonode's proposed construction—"the representation consists of only one option for activating one of the one or more functions at any given time." Rather, the flaws in Neonode's proposed construction merely confirm the indefiniteness of the claims.

First, this construction still uses the phrase "the representation consists of only one option for activating," which merely replicates the portion of the claim language that is the principal focus of the parties' dispute. The parties' main dispute relates to whether the term "option" has any reasonably certain meaning in the context of this phrase. And yet Neonode's proposed construction continues to utilize "option" and a considerable portion of its surrounding claim language, thus failing to address the parties' actual dispute or illuminate the meaning of the claim term. *See O2 Micro Int'l Ltd. v. Beyond Innovation Techs. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

Second, Neonode's proposal to replace the claim language "the function" with "one of the one or more functions" does nothing to resolve the parties' main dispute either. Even if there were support for this particular substitution in the intrinsic record, it still does not shed any meaningful light on what is the "only one option for activating" that "the representation [of a function] consists of." Nor does Neonode's proposed construction answer the questions (1) how many gestures may activate a single function and (2) how many functions may be activated by a single gesture.

Third, as explained above, there is no support in the claims, specification, or original prosecution history for Neonode's "at any given time" temporal limitation. Neonode's proposal thus injects an unsupported temporal variable into the claims. It is unclear what happens "at any given time" that would differ from any other given time in the claimed device. The claim purports to claim a device with a user interface that when used in a particular manner makes the device activate a function. But what happens "at any given time" is both unclear and unsupported by the claims. Nothing in the intrinsic record supports reading this concept into the claims. This novel coda simply opens up one more battlefront among Neonode's warring claim interpretations.

Indeed, while the claim uses the transitional term "comprising," and "the function" has the "a function" antecedent basis in the claim language, the claim language limits the "representation" to "consist[ing] of only one option for activating

the function." Appx0091 (6:50-53). The transitional phrase "consisting of" is closed-ended and limits the patentee to only what is explicitly claimed. *Vehicular Techs. Corp. v. Titan Wheel Int'l*, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000) ("'[C]onsisting of' is a term of art in patent law signifying restriction and exclusion . . . . In simple terms, a drafter uses the phrase 'consisting of' to mean "I claim what follows and nothing else."") (internal quotations omitted). Here, the applicant amended and distinguished over Hirshberg on exactly this point. The applicant made clear that Hirshberg disclosed a multi-function key, while the claimed invention was limited to a multi-step operation for activating a single function. Appx0624. Neonode's position is therefore, again, inconsistent with the prosecution history.

Neonode appears to argue that the functions vary over time. OB 30-31. But this cannot be right. The disclosures of the specification show there is no time dependency for the functions. The specification instead contemplates *predefined* functions. *See, e.g.*, Appx0083 (Abstract) (the menu has "a representation of a first (21), a second (22), and a third predefined (23) function"); Appx0089 (2:5-7) (the menu has "a representation of a first, a second and a third predefined function"); Appx0090 (4:1-3) (the menu has "a representation of a first 21, a second 22 and a third 23 predefined function"). The specification even describes specific, predefined functions: 21 is an application-dependent function, 22 is a keyboard, and 23 is a task-

and-file manager. Appx0090 (4:4-6). Indeed, one disclosed embodiment has the representations "printed on top of the enclosure 5," Appx0091 (6:17-24), which is shown in Figure 13, reproduced below, as a hardware enclosure with the predefined functions printed on it.




Fig. 13.

Appx0088 (Figure 13). Neonode offers no explanation for how a "predefined" function that is printed in hardware can vary over time. Thus, Neonode's proposed construction only serves to illustrate the inability of a skilled artisan to identify with reasonable certainty the meaning of the "only one option" term.

Neonode's latest position is just one of many that amplifies the lack of reasonable certainty about the "only one option" term. The table below summarizes some of the differing and inconsistent positions Neonode has taken throughout the various proceedings related to the '879 patent:

| **Stage of Proceedings** | **Neonode's Statements (all emphasis added)** |
|---|---|
| Google IPR Patent Owner Response (Appx0664) | "[T]he representation presents the user with one option of *what to activate*." |
| Google IPR Patent Owner Response (Appx0709) | "Robertson's *different gestures* provide the user with **several** *options* for activating the function. *Thus, it fails to meet the 'one option' limitation*." |
| Google IPR Patent Owner Response (Appx0711) | Claims do **not** "require that each function associated with the representation of the function can be activated only by one gesture." |
| Google IPR Patent Owner Response (Appx0711-0712) | "Robertson is just like Hirshberg in that it provides the user with multiple options to choose from *in terms of what to activate in the key depending on the input gesture*." |

| | |
|---|---|
| Google IPR Hearing (Appx0740) | "We are *not* proposing that the representation of a function can only be activated with one gesture." |
| Google IPR Hearing (Appx0745) | "The point is, at any given time, the user is given only one option in terms of *what gesture to put in and what action to take*." |
| Google IPR Hearing (Appx0745) | "[T]he user is given only one option in terms of *what to activate and what option to take*." |
| WDTX *Markman* hearing (Appx0043) | "The option is *the single app that is currently active*." |
| Joint Claim Construction Statement (Appx3551) | "Plain meaning" |
| New proposed construction on appeal (OB 52) | "the representation consists of only one option for activating one of the one or more functions at any given time" |

Neonode has thus, at various points, taken the positions that the "only one option" term: (1) requires that the representation have only one corresponding function (*e.g.*, Appx0664); (2) does *not* require that the representation have only one

corresponding function (*e.g.*, OB 52); (3) requires that each function be activated by only a single gesture (*e.g.*, Appx0745); (4) does *not* require that each function be activated by only a single gesture (*e.g.*, Appx0711). Neonode has also tried to inject into the term a temporal dimension ("currently," "at any given time") that is unsupported by the intrinsic record. *E.g.*, Appx0043; OB 52. Neonode's conflicting statements cannot be reconciled. Instead, they underscore the indefiniteness of the claims.

### D. Neonode's Flawed Criticisms Of The District Court's Opinion Are Misplaced.

#### 1. The District Court Applied The Correct Legal Standards To The Intrinsic Record In Ruling The Claims Indefinite.

Neonode incorrectly argues that the district court placed "undue weight" on the fact that the term "option" is absent from the specification. OB 20. The first time the district court noted the absence was in summarizing the parties' positions. Appx0024. The second time, the district court was studying the specification for any possible clues to the meaning of the term. Appx0029. And the third time was in surveying the various suggested "options" the parties had proposed. Appx0030. Nothing in the district court's opinion states or suggests that it viewed the absence of the term "option" from the specification as dispositive, as opposed to merely instructive to its broader indefiniteness inquiry. *See* Appx0023-0031. Rather, it was entirely appropriate for the district court to consult the specification for any

guidance—which turned out to be sorely lacking—as to the meaning of the claim term. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("the specification is always highly relevant to the claim construction analysis" and "[u]sually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term").

The cases that Neonode cites on this issue are inapposite. *See* OB 21-22. For example, Neonode fails to tell the whole story about *One-E-Way* when it states that "the challenged claim term was 'not defined in the Asserted Patents' and *was not found in the specification*." OB 21 (emphasis added). In *One-E-Way*, the challenged claim term was "virtually free from interference." *One-E-Way, Inc. v. Int'l Trade Comm'n*, 859 F.3d 1059, 1064 (Fed. Cir. 2017). In holding that the term did not render the claims indefinite, this Court emphasized that "[t]he specification repeatedly highlights this private-listening feature of the claimed invention." *Id.* And, the Court explained, "in each repetition, the specification states that private listening is 'without interference' from other users' wireless audio transmission devices." *Id.* Here, by contrast, nothing in the specification is remotely instructive as to the meaning of the "only one option" term.

Next, in *Primos* (a pre-*Nautilus* case), the Court held that "although the word 'engaging' is not expressly mentioned in the specification, figures 1 and 3 aid our understanding of that term." *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841,

848 (Fed. Cir. 2006). Figure 3, which the Court reproduced in its opinion, showed "there are several points of contact between the roof of a user's mouth . . . and the [claimed] diaphragm mouth call," which "hunters use to simulate animal sounds." *Id.* at 843, 848. Here, by contrast, neither the patent's figures nor any text in the specification meaningfully guide what the claimed "only one option" might be. And, as noted above, the only figure in the '879 patent (Figure 2) that potentially bears on the meaning of the "for activating the function" portion of the claim term depicts only a gesture, which Neonode has disavowed as being relevant to the disputed limitation. *See* Appx0090 (3:24-25); Appx0090 (4:7-11); Appx0085 (Figure 2).

And in *Bancorp* (also pre-*Nautilus*), the Court held that it was "fairly inferable" that "the terms 'stable value protected investment,' 'surrender value protected investment,' and 'SVP' are equivalent" based on, among other things, "the apparent correspondence between the [claim language] and the portion of the specification dealing with the subject matter of those claims." *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004). Here, by contrast, the specification permits no such inference about the meaning of "option," much less the entire disputed claim term, for the reasons explained by the district court and in this brief. Accordingly, the district court correctly ruled that the claims of the '879 patent are invalid as indefinite.

Neonode also incorrectly contends that the district court "considered the lack of an express definition of 'option' to be the primary problem with the claim." OB 20. The district court never stated or suggested that an express definition was required to avoid indefiniteness. *See* Appx0023-0031. Rather, consistent with the legal standards that it correctly articulated, the district court sought clues to the claim's meaning from the intrinsic record. Appx0019; Appx0029-0031. The court did not indicate that the absence of an express definition of the term "option" was dispositive, nor even of primary importance, in its analysis. Rather, the absence of the term from the specification was simply one aspect of the fruitless search for reasonable certainty as to the claim's scope.

Neonode further incorrectly asserts that the district court "privilege[d] the specification over the prosecution file" and "failed to address [the parties' arguments about the prosecution file] in any substantive way." OB 22. In its ruling, the district court expressly noted that "the Plaintiff cites the prosecution history for the notion that 'option' does not refer to a gesture" and then stated that "it is unclear to a POSITA what the claimed 'option' is." Appx0030. In doing so, the district cited pages of both of Neonode's claim construction briefs that address in detail the prosecution history. Appx0030. And the district court made clear that its ruling was also based on all arguments in Samsung's briefing, including those regarding the

prosecution history, which the district court's order also summarized. *See* Appx0031; Appx0025-0026.

Neonode also wrongly contends that the district court somehow failed to consider the claim language as a whole in its decision. OB 24-25. The district court made clear that it was assessing the *claims* for indefiniteness. Appx0019 ("A claim, when viewed in light of the intrinsic evidence, must inform those skilled in the art about the scope of the invention with reasonable certainty.") (internal quotations omitted); Appx0019 ("Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed."); Appx0029 (similarly articulating legal standard for indefiniteness with reference to a "claim" and ruling that "claim 1 fails the definiteness requirement"). The district court also summarized the parties' arguments regarding the context of the "only one option" claim language. Appx0027-0028 (summarizing Neonode's arguments regarding the structure of the claim language); Appx0025 (summarizing Samsung's arguments regarding the surrounding claim language); Appx0031 (stating its ruling was based, in part, on the reasons stated in Samsung's briefing). Contrary to Neonode's suggestion, the district court did not ignore the claim language as a whole in conducting the indefiniteness inquiry.

Neonode's reliance on *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1232 (Fed. Cir. 2016), is therefore misplaced. *See* OB 24. In *Cox*,

the Court stated that "the dispositive question in an indefiniteness inquiry is whether the claims, not particular claim terms, [are indefinite]." *Cox*, 838 F.3d at 1232. But at the same time, the Court recognized that individual claim terms may become the focus of an indefiniteness inquiry for good reason:

> [T]he common practice of training questions of indefiniteness on individual claim terms is a helpful tool. Indeed, if a person of ordinary skill in the art cannot discern the scope of a claim with reasonable certainty, it may be because one or several claim terms cannot be reliably construed.

*Id.* at 1232. *Cox* "present[ed] a peculiar scenario: the sole source of indefiniteness that Cox complains of, 'processing system,' plays no discernable role in defining the scope of the claims." *Id.* By contrast, the district court here engaged in precisely the "common practice" that this Court endorsed in *Cox* without losing sight of the claim as a whole. Neonode has failed to show any error in the district court's approach.

Neonode's citation to *University of Massachusetts v. L'Oreal S.A.*, 36 F.4th 1374, 1379 (Fed. Cir. 2022), similarly does not help its argument. *See* OB 24-25. Neonode's quotation from the *University of Massachusetts* case merely affirms the principle that clam are construed in the context in which they appear. 36 F.4th at 1379; *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the

prosecution history.") (quoting *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005)). As explained above, nothing in the district court's analysis contradicts this principle.

Finally, Neonode's accusation that the district court adopted a mere "differing interpretations" test is incorrect. *See* OB 25. Rather, the district court articulated and applied the correct legal standard, using language that comes straight out of *Nautilus* and this Court's precedent: "claim 1 fails the definiteness requirement because the disputed claim language—which goes to the heart of the claimed 'interface'—'might mean several different things and no informed and confident choice is available among the contending definitions.'" Appx0029 (quoting *Media Rights*, 800 F.3d at 1371, which in turn is quoting *Nautilus*, 572 U.S. at 911 n.8); *see also* Appx0029 ("A claim is indefinite if its language, when read in light of the specification and the prosecution history, 'fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'") (quoting *Nautilus*, 572 U.S. at 901 (alteration in original)). Applying this standard, the district court tested the parties' various proposed meanings (*i.e.*, gesture, function, and/or icon) against the intrinsic record to see if *any* of them found sufficient support in the record. Appx0029-0031. Based on this analysis, the district court ruled that the claims are indefinite. *See* Appx0031 ("And because there is 'no informed and confident choice [that] is available among the[se] contending definitions'; the Court

must find that the claim term is indefinite.") (quoting *Media Rights*, 800 F.3d at 1371) (alterations in original). The court did not, as Neonode wrongly suggests, simply throw up its hands when confronted with differing interpretations.

Accordingly, this case is unlike *Nevro Corp. v. Boston Sci. Corp.*, where the district court mistakenly ruled claims indefinite merely because a term was "susceptible to differing constructions." 955 F.3d 35, 41 (Fed. Cir. 2020) (cited in OB 23, 25-26, 51). Here, by contrast, the district court identified multiple competing interpretations—some of which were offered by Neonode itself at various points—and ruled that a skilled artisan could make no confident and informed choice among them. The identification of competing interpretations was thus one step in the district court's analysis—not its end point or its sum total, as Neonode wrongly suggests.

Nor is this case like *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, where the petitioner's unsuccessful "arguments for indefiniteness merely identif[ied] different ways one could interpret" the relevant claim term. 35 F.4th 1345, 1351 (Fed. Cir. 2022). Rather, as explained above, the district court applied the correct legal standard under *Nautilus*, *Media Rights*, *Interval Licensing*, and similar precedent.

### 2. The District Court Adequately Addressed Neonode's "Icon" Argument.

Neonode goes on to fault the district court for attributing to it an argument Neonode claims it did not make. OB 44-49. But the fault for any misunderstanding resides with Neonode. Throughout this case and other proceedings regarding the '879 patent, Neonode has failed to take a consistent and concrete position regarding the identification of the claimed "option." Neonode's counsel purported to identify the claimed "option" at the *Markman* hearing in this case. But still, a clear identification never came. *See, e.g.*, Appx0042 ("The option, your Honor, is when you go to figure 3."); Appx0043 ("It's the option. The single app that is currently active. That is the option."); Appx0043 ("The option is the single app that is currently active."); Appx0043 ("Figure 3 shows that if the first function 21. . . is activated, then the display area is adapted to display icons 211 through 216 representing services or functions, depending on the current active application. That is what the option is. That describes the option."). And both Neonode's *Markman* briefing and oral argument invoked the "icon" in connection with what may constitute the claimed "option." *See* Appx1062; Appx0044 (lines 2-6).

Even on appeal, Neonode has proposed a construction of "the representation consists of only one option for activating the function" that continues to use the exact words whose indeterminacy is the principal source of the dispute. *See* OB 52 (Neonode proposing the construction "*the representation consists of only one option*

*for activating* one of the one or more functions at any given time" (emphasis added to portion of construction that is identical to claim language)). But Neonode still has failed to take a clear and consistent position on the identification of the claimed "option," thus leaving open possibilities that include "icon." The district court properly considered the various permutations that it could glean from Neonode's arguments.

Regardless, the district court's rejection of an argument Neonode claims it did not make can hardly be error. Whether Neonode argued that the "only one option" language means "presenting a user with an icon" or not, the district court rejected that notion, and Neonode does not take issue with that conclusion. Neonode instead distances itself from that position. OB 44-49. And whether the district court may have misinterpreted one of Neonode's ambiguous arguments does not affect the correctness of its ultimate legal conclusion of indefiniteness.

Finally, Neonode repeatedly mischaracterizes the district court's opinion as having stated that its rejection of Neonode's "icon" argument was "critical" to its analysis. *See* OB 13, 15, 48. The district court said no such thing. Rather, within its analysis and rejection of Neonode's "icon" argument, the district court stated: "Critically, the patentee knew how to claim these graphical user interface elements—it called them '***icons***.'" Appx0030 (emphasis in original). The district court thus used a form of the word "critical" to describe the relationship between a

portion of the claim language and the court's rejection of Neonode's "icon" argument. Contrary to Neonode's assertion, the district court did not use "critical" to describe the relationship between its rejection of the "icon" argument and its overall conclusion of indefiniteness. Moreover, the district court ultimately concluded that "[i]n sum, for at least the reasons identified above, the reasons stated in Samsung's briefing, and the reasons identified in the Court's oral ruling on the record, the Court finds that this term is indefinite." Appx0031.

#### 3. The District Court Properly Disregarded Neonode's Expert's Declaration.

Neonode is also wrong to assail the district court for stating that "Neonode does not rely on an expert for its claim construction briefing." Appx0020; *see* OB 49. As a threshold matter, Neonode tries to bury in a footnote the likely basis of the district court's statement: Neonode itself uniformly mis-cited the exhibit as "Exhibit 24" in its responsive *Markman* brief when it was actually "Exhibit 2," there were no citations to "Exhibit 2" in any of its *Markman* briefing, and Neonode's brief did not indicate that "Exhibit 24" was supposed to refer to its expert's declaration. *See* Appx1059-1074. Then Neonode's sur-reply brief cited the declaration only by its docket number ("81-1") and signaled in only one instance that "81-1" was its expert's declaration. *See* Appx3539-3540; Appx3542; Appx3546. Neonode never corrected its error (despite filing an errata on other matters relating to its responsive *Markman* papers, Appx2724-2725) and never sought reconsideration from the

district court after receiving its written opinion—even though final judgment was not entered until 19 days later. *See* Appx0082. Neonode's attempt to shift the blame for its errors and omissions to the district court—and then to seek reversal on that basis—should be resoundingly rejected.

In any event, whatever the cause, the district court's treatment of this issue does not change the correctness of its ruling for three reasons. First, the intrinsic record alone is sufficient to resolve indefiniteness here. As in *Teva* and *Infinity*, both discussed above, the intrinsic record here is conclusive. Neonode's expert's testimony is therefore immaterial to the outcome. *See Eidos Display, LLC v. AU Optronics Corp.*, 779 F.3d 1360, 1365 (Fed. Cir. 2015). The district court did not need to consider that testimony or any other extrinsic evidence.

Second, Neonode's expert essentially parroted the same analysis of the intrinsic record that Neonode presented in its briefing and at argument—all of which the district court addressed. *See* Appx1088-1103. Neonode's expert did not provide any other evidence of how one skilled in the art would have understood the disputed claim term in 2002. *See* Appx1088-1103. The district court analyzed the intrinsic record and the parties' arguments regarding the same and determined that the intrinsic record failed to provide reasonable certainty as to the bounds of the claims. Appx0029-0031. Accordingly, the district court did not need to consider Neonode's expert's declaration.

Third, at worst, any error was harmless under 28 U.S.C. § 2111. *See Tex. Advanced Optoelectronic Sols. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1316 (Fed. Cir. 2018) ("Harmless-error review is a flexible one in which we determine whether the error is harmless through the case specific application of judgment, based on examination of the record.") (internal quotation marks and alterations omitted). Because the intrinsic record suffices to resolve the indefiniteness issue, and the expert declaration adds no meaningful analysis that the district court did not already consider, any error in disregarding it was harmless.

Finally, even if the Court were to conclude that disregarding the expert declaration was a prejudicial error, the most that Neonode could obtain at this point is a remand for the district court to address it in its analysis.

The district court's ruling that the claims of the '879 patent are invalid as indefinite under 35 U.S.C. § 112, ¶ 2 is correct and should be affirmed.

### E. Alternatively, The District Court's Judgment of Invalidity Should Be Affirmed Because The "Gliding" Term Is Indefinite.

Even if this Court disagrees with the district court on the "only one option" term, there is an alternative ground for affirmance: the "gliding" term also renders the claims invalid as indefinite because it fails to inform a skilled artisan of the scope of the claims with reasonable certainty. "A successful party in the District Court may sustain its judgment on any ground that finds support in the record." *Jaffke v. Dunham*, 352 U.S. 280, 281 (1957). Because Samsung demonstrated the

indefiniteness of the "gliding" term in the record below, it supplies an alternative basis for affirmance.

The intrinsic evidence supplies no objective criteria for distinguishing "gliding" from other possible movements of the object along the touch-sensitive area as of the 2002 priority date. As a result, the intrinsic evidence fails to inform a skilled artisan of the bounds of the claim with reasonable certainty. The applicant added the term "gliding" to the claims in 2008—six years after the original application was filed—even though that term appeared nowhere in the specification. Neonode's positions in the '879 patent IPRs failed to cure this lack of intrinsic support—and, in fact, made the problem worse. Both in the IPRs and below, Neonode admitted that parameters like speed, acceleration, and distance would be relevant to distinguishing a glide from other movements. But the intrinsic evidence provides no clue as to how these parameters would enable a skilled artisan to identify a movement as a "glide" or to distinguish it from a "flick" or a "drag," as Neonode's and the district court's constructions require. Neonode's assertion that the examiner could perceive a "glide" while watching a video of a 2007 Neonode product—but still could not articulate its meaning or limits—does not help at all. Nor did Neonode's extrinsic evidence shed any light on the term's scope, much less enough to overcome indefiniteness.

In addition, Neonode takes positions about what "gliding" *does not* mean, but these disclaimers and exclusions fail to inform a skilled artisan with reasonable certainty about what "gliding" *does* mean. Without reasonably certain bounds on the scope of the "gliding" term, the claims are indefinite. Although the district court rejected this argument, the record below is complete such that this Court can affirm the final judgment of invalidity of the '879 patent on this alternative ground if needed.

#### 1. The Claims, Specification, And Prosecution History Fail To Inform A Skilled Artisan With Reasonable Certainty As To The Meaning Of The Term "Gliding."

While the term "gliding" appears multiple times in the claims of the '879 patent, it—like "option"—appears nowhere in the specification. *See* Appx0083-0091. And the most that one can glean from the claims is that the term purports to describe *some* movement of an object "along the touch sensitive area" of the claimed device "away from the touched location." *See* Appx0091-0092. For example, claim 1 requires "the object gliding along the touch sensitive area away from the touched location." Appx0091. Yet, what "gliding" is and what movements constitute a "glide" remain entirely unclear.

Beyond not using the word "glide" or other forms of the word at all, the specification fails to outline any parameters that may distinguish a "glide" from other gestures. The specification and prosecution history lack information regarding

parameters such as time, distance, speed, or some combination thereof to convey the scope of a "glide" with reasonable certainty. And Neonode itself has admitted that such parameters are how a purported "glide" is distinguished from certain other gestures. Appx0741 ("yes, you do have to keep track of the characteristics [such as speed or acceleration or distance] that would make it a gliding as opposed to a flick"). But neither the intrinsic record nor Neonode has supplied any such parameters to distinguish the claimed "glide" from other movements along the touch-sensitive area of a user interface. And without a well-understood meaning in the relevant art in 2002, which the underlying record fails to support, the term lacks reasonably ascertainable boundaries.

The prosecution history also does not support Neonode's position. As discussed above, the applicant argued that the claimed invention differed from the cited prior art (Hoshino) because, in the claimed invention, a function is activated only in response to a touch-and-glide operation. The applicant argued that this feature differentiated the claimed invention from the prior art because the function is activated upon a touch that meets a certain threshold in the prior art. Appx0952. The applicant illustrated the purported difference as follows:



Function activation operation of claimed invention vs. that of Hoshino

Appx0952. In other words, the prior art contained a pressure sensor that, once the pressure met a certain threshold, would lead to activation of the function before any glide operation occurs. Appx0952. Accordingly, the sequence of the touch, glide, activate operation was the basis for the applicant's distinction between the claimed invention and Hoshino. Appx0952. Further, the reference to a "drag-and-drop" operation relates to how a device *responds* to a gesture and does not help distinguish a "glide" from a "drag" in any meaningful way. *See* Appx0952-0954.

Neonode also argued that a link to a website that contains a video advertisement for a mobile device sold by the applicant that was submitted during prosecution exhibits the claimed "gliding." *See* Appx0033; Appx1697; Appx2311; Appx3233. But the applicant's submission of a video similarly fails to inform a skilled artisan as to the scope of the claim term. Neonode has not explained how the video provides any objective parameters for understanding the scope of "gliding" and how the video elucidates the distinctions Neonode purports to make among "gliding," "flicking," "dragging," and "inserting" with any reasonable certainty. Additionally, the video describes a product released in 2007, five years after the filing of the application. *See* Appx0663. The video in no way links the movement shown with any disclosure in the specification as filed in 2002. What the applicant failed to do is place any reasonably certain limits on, or otherwise define, the term "gliding."

### 2. Neonode's IPR Positions Aggravate The Lack Of Clarity Regarding The Meaning Of "Gliding."

Neonode's statements in the IPRs about the "gliding" term only muddy the waters further and confirm the indefiniteness of the claims. As previously noted, Neonode has attempted to differentiate "gliding" from more general "movement." During the Google IPR, Neonode accused Google of improperly equating the two. Appx0690 ("Petitioner . . . fails to substantiate its premise that any 'movement' constitutes 'gliding . . . away'—a premise at odds with the plain meaning and the intrinsic record."); *see generally* Appx0690-0694. Neonode has said, in various ways, that "glide" means a longer, continuous, and effortless motion. Appx1066 (district court case); Appx0695-0696 (Google IPR). And in the Google IPR, Neonode attempted to distinguish "gliding" from "flicking." Appx0694-0703. Turning to the Samsung IPR, Neonode invoked an image from a completely unrelated field of endeavor, arguing that "gliding" was a "seamless, effortless movement, gliding away like a figure skater." Appx2487. But Neonode never supplied any meaningful way to ascertain the scope of "gliding" with reasonable certainty. Nor did Neonode provide any objective basis for determining which continuous motions constitute a "glide" as opposed to a "drag," a "flick," or something else—much less a basis supported by the intrinsic record. Neonode's IPR statements therefore underscore indefiniteness based on the "gliding" term too.

None of "glide," "drag," or "flick"—nor any variation of those terms—appears in the specification of the '879 patent. *See* Appx0083-0091. And, as shown above, the specification fails to outline parameters that might define such gestures—even though Neonode's counsel noted the importance of such parameters at the hearing on the Google IPR regarding the '879 patent:

> You have to keep track of the characteristics of the motion, whether it's speed or acceleration or distance. . . . But, yes, you do have to keep track of the characteristics that would make it a gliding as opposed to a flick. . . .

Appx0741. Without a way to relate such parameters to Neonode's asserted distinctions, the scope of the term remains highly uncertain, especially from the perspective of a skilled artisan in 2002.

In this litigation, Neonode sought an otherwise-unbounded construction that excludes only "a drag and drop operation." Appx1066. In the Samsung IPR, Neonode tried to distinguish "gliding" from "dragging." Appx0821-0826. But during prosecution, the applicant equated "gliding" and "dragging" in distinguishing the prior art. First, the applicant distinguished Hoshino as follows:

> In distinction, the claimed invention activates a function <u>in response to a multi-step touch-and-glide operation</u>. Thus in particular, referring to the illustration below, the claimed invention responds to a (hard) touch followed by a glide differently than Hoshino. Specifically, the claimed invention activates a function after the glide, whereas Hoshino activates the function after the (hard) touch.

Appx0952 (emphasis in original). And the applicant illustrated as follows:




Function activation operation of claimed invention vs. that of Hoshino

On the next page of the response to the examiner's office action, the applicant noted that "Hoshino does not teach gliding a finger away from an icon" because "Hoshino teaches a drag-and-drop operation for moving an icon." Appx0953. So, if Hoshino teaches a drag-and drop operation that proceeds as touch>activate>glide, the "glide" in this example equates to a "drag." One cannot reconcile Neonode's litigation positions with these statements in the prosecution history. Moreover, even if each is considered in isolation, *none* of these statements allows a skilled artisan to understand the boundaries of "gliding" with any reasonable certainty.

Further complicating the matter, the named inventor on the '879 patent equated "gliding" with both "dragging" and "sliding." Appx0960. As in *Teva*, discussed above, Neonode's inability to consistently and coherently define the contours of a "glide" underscores the term's indefiniteness. 789 F.3d at 1342.

"'[T]he limits of a patent must be known' because the goal of the definiteness requirement is 'to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty.'" *Interval Licensing*, 940 F.3d at 694-95 (quoting *Gen. Elec. Co. v. Wabash Appliance Corp.*, 304 U.S. 364, 369

(1938)). Here, the limits of the "gliding" term cannot be determined with reasonable certainty, and Neonode is not allowed to reap the fruit of this uncertainty. The indefiniteness of "gliding" is therefore another independent ground to affirm the judgment.

**3. The Record Does Not Support The District Court's Vague Construction Of "Gliding."**

The district court erred in ruling that the "gliding" term is not indefinite and adopting the "plain and ordinary meaning, not including dragging, flicking, or a drag and drop operation."

The district court first stated that "[t]he claims use 'gliding' according to its ordinary meaning: a smooth, continuous movement across or along a surface." Appx0034. But the district court did not incorporate this definition into its actual construction. And regardless, are two problems with Neonode's extrinsic evidence: (1) the extrinsic evidence is not instructive of the meaning of the term in the relevant art to a skilled artisan in 2002; and (2) it consists of general dictionary definitions that merit no weight here.

First, Neonode's extrinsic evidence is not instructive to a skilled artisan in the relevant art in 2002. General dictionary definitions are no substitute for "the meaning a skilled artisan would reasonably understand from the intrinsic record." *Grace Instruments Indus., LLC v. Chandler Instruments Co., LLC*, 57 F.4th 1001, 1010 (Fed. Cir. 2023); *see also Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d

1473, 1478 (Fed. Cir. 1998) ("Courts must exercise caution lest dictionary definitions, usually the least controversial source of extrinsic evidence, be converted into technical terms of art having legal, not linguistic, significance. The best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history."). Instead, "where evidence . . . demonstrates that artisans would attach a special meaning to a claim term, or, as here, would attach no meaning at all to that claim term (independent of the specification), general-usage dictionaries are rendered irrelevant with respect to that term; a general-usage dictionary cannot overcome credible art-specific evidence of the meaning or lack of meaning of a claim term." *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1321 (Fed. Cir. 2004) (citations omitted). Neonode's general usage dictionaries do not supply a definite meaning in the technical field at the relevant time or enable a skilled artisan to ascertain with reasonable certainty the boundaries of the term as used in the claims.

Second, as described above, the intrinsic record fails to accord the "gliding" term any meaning with reasonable certainty. And Neonode has muddied the waters throughout the various proceedings regarding the '879 patent. Neonode has failed to put reasonably certain boundaries on the claims. Indeed, rather than attempt to define the term as it would have been understood to a skilled artisan in 2002, Neonode has attempted to start with broad, general dictionary definitions that do not

inform what a skilled artisan would have understood and then merely excise certain scope to avoid prior art.

Having started with the wrong foundation, the district court next ruled that Neonode's distinction between "gliding" and "dragging" is "sufficient" to render the term not indefinite. Appx0034. But neither Neonode nor the district court has identified any reasonably certain way to perceive this distinction. Moreover, the mere exclusion of certain subject matter—itself ill-defined—from the scope of a term cannot confer reasonable certainty that is otherwise lacking from the record. Here, even if one were to accept the proposed distinction in theory, a skilled artisan still cannot discern the boundaries of "gliding" with reasonable certainty.

Indeed, Neonode's purported exclusions to the scope of the term "gliding" only serve to make the meaning of the term more ambiguous and less certain. Any distinction among "gliding," "dragging," "flicking," "inserting," or other gestures is neither described in the intrinsic record, nor during the course of the proceedings related to the '879 patent. Without any parameters around the definitions of these purported exclusions—"inserting," "flicking," "dragging," "drag and drop," etc.—not only are the contours of what "gliding" is murky, but so are the contours of what it is not.

Finally, the district court found "[i]mportant[]" that "the examiner and the PTAB . . . came to understand the differences between these movements."

Appx0034. But all the examiner did was watch a video of a 2007 Neonode device and then make a generalized assertion of enlightenment. *See* Appx0032-0034; Appx3233. The colloquy with the examiner led to the amendment of the claims to replace "movement" with "gliding." *See* Appx0033. But neither the applicant nor the examiner articulated any objective parameters—even imprecise ones—by which a skilled artisan could confidently identify any particular movement as a "glide" (and not a "drag," "flick," or something else).

Moreover, the examiner's alleged "understanding" cannot be determinative. *See TVnGO Ltd. (BVI) v. LG Elecs. Inc.*, 861 F. App'x 453, 458 (Fed. Cir. 2021) (nonprecedential) ("we are unconvinced that the disputed phrases are far from indefinite merely because they were added to the claims, discussed, understood and considered by the Examiner, and ultimately allowed") (internal quotations omitted). The relevant inquiry is not whether *someone* can understand the difference between certain gestures. *See Nautilus*, 572 U.S. at 912. Instead, the inquiry is whether the scope of the claims can be understood with reasonable certainty by a skilled artisan in 2002. *See id.* Here, there is no such reasonable certainty as to "gliding," so the claims are indefinite for this reason too.

Reliance on the PTAB's alleged understanding is also misplaced because the PTAB cannot find a challenged patent claim indefinite. The indefiniteness inquiry is "outside [the PTAB's] statutory limits." 35 U.S.C. § 311(b); *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275, (2016). Moreover, this Court "ha[s] held the Board can render prior art patentability determinations even if claims are indefinite." *See Nichia Corp. v. DSS, Inc.*, No. 22-1704, 2023 WL 7211097, at *3 (Fed. Cir. Nov. 2, 2023) (nonprecedential) (citing cases).

The '879 patent is thus invalid as indefinite under 35 U.S.C. § 112, ¶ 2 for two independent reasons: (1) the "only one option" term renders the claim invalid and (2) the "gliding" term does as well. Either is a sufficient basis for this Court to affirm.

## VII. CONCLUSION

The district court correctly ruled that the "only one option" claim term rendered the claims of the '879 patent invalid as indefinite under 35 U.S.C. § 112, ¶ 2. The judgment should be affirmed on this basis alone. The "gliding" term also renders the claims invalid as indefinite and supplies an independent, alternative basis for affirmance if needed.

Dated: February 26, 2024

**DLA PIPER LLP (US)**

By: */s/ Stanley J. Panikowski*

Stanley J. Panikowski
Tiffany C. Miller
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: (858) 677-1400

Mark D. Fowler
DLA PIPER LLP (US)
3203 Hanover Street, Suite 100
Palo Alto, CA 94304
Tel: (650) 822-2000)

Brian K. Erickson
DLA PIPER LLP (US)
303 Colorado Street,
Suite 3000
Austin, TX 78701
Tel: (512) 457-7059

Jessica L. Hannah
DLA PIPER LLP (US)
555 Mission St., Suite 2400
San Francisco, CA 94105
Tel: (415) 836-2500

*Attorneys for Defendants-Appellees Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-2304

**Short Case Caption:** Neonode Smartphone LLC v. Samsung Electronics Co., Ltd.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 13,319 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 02/26/2024

Signature: /s/ Stanley J. Panikowski

Name: Stanley J. Panikowski