Case No. 23-2304

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**NEONODE SMARTPHONE LLC**,

*Plaintiff-Appellant*,

v.

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.**,

*Defendants-Appellees.*

Appeal from the United States District Court for the Western District of Texas, Case No. 6:20-CV-00507-ADA, Judge Alan D Albright

# REPLY BRIEF OF APPELLANT NEONODE SMARTPHONE LLC

Philip Graves
Greer Shaw
GRAVES & SHAW LLP
355 S. Grand Ave., Suite 2450
Los Angeles, CA 90071
(213) 204-5101

Brian D. Melton
Bryce Barcelo
Rocco Magni
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 653-7825

Kalpana Srinivasan
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100

*Counsel for Appellant Neonode Smartphone LLC*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-2304

**Short Case Caption** Neonode Smartphone LLC v. Samsung Electronics Co., Ltd

**Filing Party/Entity** Neonode Smartphone LLC

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/01/2024

Signature: /s/ Philip Graves

Name: Philip Graves

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Neonode Smartphone LLC | | Aequitas Technologies LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Gregory Phillip Love<br>Steckler Wayne Cherry & Love PLLC | Justin Wayne Allen<br>Cherry Johnson Siegmund James PLLC | |
| Craig Cherry<br>Cherry Johnson Siegmund James PLLC | | |
| Mark Siegmund<br>Cherry Johnson Siegmund James PLLC | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS


I. ARGUMENT ........................................................................................1

A. Samsung Fails to Salvage the District Court's Erroneous "Three Meanings" Conclusion. ........................................................1

B. Samsung's Cases are Inapposite........................................................9

C. Samsung Fails to Rebut Neonode's Showing that Limitation 1[b] Should be Given a Plain Meaning Construction. .......................11

D. Samsung Fails to Rebut Neonode's Showing that the District Court Committed Reversible Error. ................................................15

1. The District Court Did Not Correctly Apply the Governing Legal Standards....................................................15

2. Samsung Fails to Rebut Neonode's Showing that the District Court's Erroneous Attribution of an "Icons" Argument to Neonode was Prejudicial...................................19

E. This Court Should Not Disturb the District Court's Holding that "Gliding ... Away" is Not Indefinite..........................................22

1. The Claims, Specification, and Prosecution File Clearly Inform a POSITA as to the Meaning of "Gliding". ..................22

2. Neonode's Arguments in the IPRs Were Entirely Consistent with the Intrinsic Record. ......................................29

3. The Record Supports the District Court's "Plain Meaning" Construction. .........................................................31

II. CONCLUSION ........................................................................................32

CERTIFICATE OF COMPLIANCE..................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017)....32

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
359 F.3d 1367 (Fed. Cir. 2004)....3, 5, 16

*Bright Data Ltd. v. BI Sci. (2009) Ltd.*,
2023 WL 5605658 (Fed. Cir. Aug. 30, 2023)....10

*Grace Instrument Indus., LLC v. Chandler Instruments Co.*,
57 F.4th 1001 (Fed. Cir. 2023) ....11, 32

*HZNP Medicines LLC v. Actavis Labs. UT, Inc.*,
940 F.3d 680 (Fed. Cir. 2019)....10

*Infinity Comput. Prods, Inc. v. Oki Data Ams., Inc.*,
987 F.3d 1053 (Fed. Cir. 2021)....9, 10

*MasterMine Software, Inc. v. Microsoft Corp.*,
874 F.3d 1307 (Fed. Cir. 2017)....27

*Nature Simulation Systems Inc. v. Autodesk, Inc.*,
50 F.4th 1358 (Fed. Cir. 2022) ....17

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014) ....8, 18, 32

*Nevro Corp. v. Boston Scientific Corp.*,
955 F.3d 35 (Fed. Cir. 2020) ....14, 19

*One-E-Way, Inc. v. Int 'l Trade Comm 'n*
859 F.3d 1059 (Fed. Cir. 2017)....3, 16

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....31

*Primos, Inc. v. Hunter's Specialties, Inc.*,
451 F.3d 841 (Fed. Cir. 2006)....3, 16

*Saffran v. Johnson & Johnson*,
712 F.3d 549 (Fed. Cir. 2013)....27

*Solomon v. Kimberly-Clark Corp.*,
216 F.3d 1372 (Fed. Cir. 2000)........................................................................................29

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
844 F.3d 1370 (Fed. Cir. 2017)........................................................................... 22, 29, 32

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
789 F.3d 1335 (Fed. Cir. 2015)...................................................................................9, 10

# I. ARGUMENT

## A. Samsung Fails to Salvage the District Court's Erroneous "Three Meanings" Conclusion.

Samsung contends that the district court correctly concluded that claim 1 is indefinite because limitation 1[b] purportedly has "at least three possible and conflicting meanings." RB 22. However, Samsung fails to overcome Neonode's showing that ***none*** of these alleged meanings is supported by the intrinsic record. Accordingly, Samsung's "three meanings" argument fails.

Samsung begins with the claim language, insisting that it is unclear whether the "only one option" refers to "the 'multi-step operation,' a 'function,' or something else." RB 22. As Neonode explained in its Opening Brief, "only one option" refers to a characteristic of the representation—i.e., how many functions may be activated at a given time—not of the function or of how the function is activated. OB 31-32. This follows from use of the "consists of" transitional phrase within limitation 1[b]: "***the representation consists of*** only one option for activating the function." Appx0091.[1] Samsung fails to address this point.

Samsung next acknowledges that "it makes little sense to equate 'option' with 'function' when the 'only one option' is 'for activating the function.'" RB 23. Neonode agrees—"option" is not "function." Yet, that is exactly what Samsung

---

[1] All emphases within quotations are added unless otherwise indicated.

proposes in its first and third "meanings," both of which propose that "[t]he representation represents a **single function** …." Appx0024 ( emphasis in original). So, Samsung's opening argument torpedoes two of Samsung's three purported "meanings."

Samsung next suggests that the "only one option" language refers to a gesture, pointing to the "activated" language of limitation 1[c]. However, the "only one option" phrase is an element of limitation 1[b], ***not*** limitation 1[c]. Moreover, limitation 1[c] recites the activation operation in open format ("wherein the function is activated by a multi-step operation ***comprising*** …."), which would conflict with the "consists of" transitional phrase of limitation 1[b] if "only one option" referred to a gesture. OB 31-32; Appx0091. In the next sentence Samsung pivots 180°, asserting that "the concept of the 'option' as a gesture is difficult to square with the preface 'representation consists of.'" RB 23. Neonode agrees—as shown in Neonode's Opening Brief, the "only one option" language of limitation 1[b] does not mean "only one gesture." OB 31-38. So by two pages into its argument, Samsung has acknowledged that ***none*** of its purported "three meanings" makes sense in light of the intrinsic record.

Samsung represents that Neonode "embraced" the position that "only one option" refers to a gesture, but Neonode never did so. OB 36-38. Samsung's

purported support for this assertion is a snippet of the Google IPR trial transcript that says no such thing:

> You swipe, the device activates what it activates. It can be one function or a different function, but the user is given only one option in terms of what to activate and what option to take.

Appx0745 (73:13-16). At the same trial, Neonode's counsel stated:

> We are not proposing that the representation of a function can only be activated with one gesture.

Appx2051 (48:2-3). Samsung has no response to this. Thus, far from "embracing" the position that the "option" is a gesture, Neonode expressly rejected that position in its IPR papers, in its IPR demonstrative exhibits and at the trial. OB 36-38.

Echoing the district court, Samsung next asserts that "the specification of the '879 patent does not help because the word 'option'" is "absent from the specification." RB 24. First, this Court has repeatedly held that there is no requirement that the exact claim language appear in the specification. *One-E-Way, Inc. v. Int 'l Trade Comm 'n*, 859 F.3d 1059 (Fed. Cir. 2017); *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841 (Fed. Cir. 2006); *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004); OB 21. Second, Samsung fails to address the fact that, as the applicant explained during prosecution, Appx2943, the specification contains ***three examples*** of representations that "consist of only one

option for activating" a function. Appx0085 (Figure 1, elements 21-23), Appx0090 (4:1-6, 13-33).

Turning to the prosecution file, Samsung contends that the applicant during prosecution and Neonode during the Google IPR described the "option" as being a function. RB 25-29. Not so. First, Samsung acknowledges that the applicant identified elements 21-23 as support for the newly-added limitation 1[b], but then incorrectly asserts that "[t]he specification describes representations 21, 22, and 23 as 'predefined functions.'" RB 25. In fact, the specification refers to these elements as "representation[s] ***of***" a first, second, and third function. Appx0090. Clearly, the representations are not themselves the functions.

Next, Samsung contends that the applicant's description of support for limitation 1[b] can "be read to imply the 'option' is a function." RB 26. But the first sentence in the paragraph to which Samsung points states:

> Applicant notes that ***each representation*** 21 - 23, shown in FIG. 1 of the original specification, ***consists of only one option for activating*** its ***corresponding function***.

Appx0625. Since the option is "for activating" a function, the option is not itself the function. Samsung acknowledges this, RB 26, but professes confusion as to what the applicant intended. When read in the context of the applicant's explanation of how the newly-added language distinguished Hirshberg, it is clear that the applicant was not equating "option" with "function." Moreover, such an interpretation is

contradicted by the language of limitation 1[b], which recites that the "option" is "for activating" a function, not that the option is itself a function.

Continuing in this vein, Samsung asserts that "Neonode has taken conflicting positions during IPR proceedings on the '879 patent" concerning the meaning of limitation 1[b]. RB 28. Samsung acknowledges that Neonode "expressly disavowed the notion that the 'option' is a gesture, whether one or more." *Id*. But Samsung contends that Neonode also argued "that the 'option' is a gesture." *Id*. The former is true, the latter is not. First, Samsung quotes a portion of two sentences from Neonode's POR in the Google IPR in which Neonode distinguished Robertson, the primary asserted reference. However, Samsung's quote omits the first clause of the sentence, in which Neonode referenced its full explanation. Appx0709 ("As will be explained below …"). There, Neonode explained that Google's interpretation of "the one-option limitation to require that each function associated with the representation of the function can be activated ***only by one gesture***" was "***incorrect***." Appx0711. Samsung also omits the second clause of the sentence, Appx0709 ("Robertson is like Hirshberg, because …"), which makes it clear that Neonode was distinguishing Robertson by showing that Robertson's Xbuttons were like Hirshberg's multi-function keys. Hirshberg's keys were distinguished during prosecution based on how many functions, not how many gestures, could be

activated at a given time. There is no inconsistency—Neonode never argued that the "option" is a gesture.

Samsung also cites to two snippets from the IPR trial. Here again, context is important. In the portion of the trial to which Samsung cites, Neonode was, again, distinguishing Robertson on the basis of its similarity to Hirshberg. Neonode explained that the applicant had:

> distinguished Hirshberg because it said Hirshberg teaches a touch and glide operation only for ***keys that comprise several characters***, meaning only for ***keys that give the users several options on what to do***, depending on the input gestures.
>
> ***In distinction***, the claimed invention uses a multistep touch and glide operation for ***representation that consists of only one option for activating a function***.

Appx0743 (71:3-11). So Neonode's counsel was clearly focusing on ***the number of functions*** that could be activated at a given time. Whether Hirshberg and Robertson taught multiple gestures for activating the keys was tangential to the argument. Neonode made the same point in one of the snippets quoted by Samsung:

> ***You swipe, the device activates what it activates***. It can be one function or a different function, but the user is given only one option in terms of what to activate and what option to take.

Appx0745 (73:13-16). As shown above and in Neonode's Opening Brief, OB 36-38, Neonode was very clear on this point:

> We are ***not*** proposing that the representation of a function can only be activated with one gesture.

Appx2051 (48:2-3). Samsung does not rebut these facts.

Next, Samsung asserts that "Neonode has also argued inconsistently that the 'option' is a function." RB 28-29. Incorrect. Neonode consistently argued that the "option" is an option ***of what to activate***, rather than that the "option" is itself the thing activated. Moreover, if Samsung is contending that Neonode argued for a permanent one-to-one mapping of representation to function, that too is incorrect. In its IPR briefs and at the IPR trial, Neonode clearly and repeatedly explained that the "only one option" language does not mean "only one function." For example:

> But we are not arguing that the representation must only have one function. That's not what we're arguing. So if Your Honors would go to Slide No. 65.
>
> Petitioner is correct insofar as, in the specification, a representation can ***at different times*** have multiple functions. Yes.

Appx2055-2056 (72:23—73:3), Appx2025-2026, Appx2123 (Slide No. 65), Appx1096-1097 (¶52). Neonode never argued that the representation had to enable activation of only one function at all times. Neonode, rather, acknowledged that while the representation may enable activation of multiple functions at different times (like element 21 of Figure 1), it must consist of only one option for activating a represented function at ***any given time***. *Id.*

Finally, Samsung contends that Neonode "also argued that the 'option' is somehow defined with respect to the representation of a function," citing to a portion of the POR in the Google IPR discussing the applicant's arguments distinguishing Hirshberg. RB 29. Samsung's point here is unclear. The page cited by Samsung shows Neonode arguing that limitation 1[b] does not "require that each function associated with the representation of the function can be activated only by one gesture." Appx0711. As shown above and in Neonode's Opening Brief, this has been Neonode's position all along.

The indefiniteness inquiry is not a game of "gotcha," in which any arguable ambiguity or inconsistency is grounds for invalidating a claim. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909 (2014) ("Some modicum of uncertainty, the Court has recognized, is the price of ensuring the appropriate incentives for innovation.") (internal quotes omitted). Yet that is the game Samsung is playing, pecking around the prosecution file and IPR record looking for purported "inconsistencies" to try to spin into a lack of reasonable certainty. The record as a whole paints a different picture, showing that Neonode has consistently rejected the unsupported "meanings" that Samsung peddled to the district court. There is no inconsistency, and certainly none that would justify holding claim 1 invalid for indefiniteness.

### B. Samsung's Cases are Inapposite.

Samsung cites a handful of cases that purportedly support its position. They are inapposite.

Samsung first cites *Infinity Comput. Prods, Inc. v. Oki Data Ams., Inc.*, 987 F.3d 1053 (Fed. Cir. 2021). In *Infinity*, the claim at issue recited a method including transmitting signals "via a passive link between the facsimile machine and the computer …." *Id.* at 1054. This Court held that the patentee's statements during a reexamination proceeding created fatal uncertainty concerning where the "passive link" ends and the "computer" begins, because they were inconsistent with arguments that the applicant had made to overcome a reference during prosecution.

Samsung also cites *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335 (Fed. Cir. 2015). In *Teva*, the claim at issue recited a method of manufacturing a compound "having a molecular weight of about 5 to 9 kilodaltons." *Id.* at 1338. However, there were three relevant measures of molecular weight, each of which would produce a different value, and neither the claims nor the specification indicated which measure to use. Moreover, in response to indefiniteness rejections in two related prosecutions, the applicant had asserted that one measure ("$M_w$") was the correct measure in one prosecution while asserting that a different measure ("$M_p$") was the correct measure in another. As a result, this Court found that the claim was indefinite. *Id.* at 1344-45.

Samsung contends that these cases are analogous to the instant case. They are not. First, unlike in *Infinity* and *Teva*, here Neonode has ***not*** taken inconsistent positions concerning the meaning of limitation 1[b]. As shown above and in Neonode's Opening Brief, Neonode has consistently maintained that the "only one option" language refers to ***how many*** functions may be activated at a given time, and not to either a gesture or a function itself. Samsung's effort to find an inconsistency fails because there is none to be found.

*HZNP Medicines LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680 (Fed. Cir. 2019), is also distinguishable. In *HZNP*, this Court affirmed a district court's conclusion that a claim reciting a formulation that "produces less than 0.1% impurity A after 6 months" was indefinite, because the specification provided "no clue as to the identity of 'impurity A.'" *Id.* at 691. Here, unlike in *HZNP*, limitation 1[b] is not recited in terms of an undefined variable ("impurity A"), which inherently requires a definition in the intrinsic record. *Bright Data Ltd. v. BI Sci. (2009) Ltd.*, 2023 WL 5605658 (Fed. Cir. Aug. 30, 2023) is similarly distinguishable, because here there is no conflation of claim terms as occurred in that case.

Moreover, unlike in any of Samsung's cases, here the specification and prosecution file provide consistent guidance as to the meaning of the "only one option" language. As shown above and in Neonode's Opening Brief, the specification provides three examples of representations that "consist of only one

option for activating" a function. Appx0085 (Figure 1, elements 21-23), Appx0090 (4:1-2); OB 54-55. The prosecution file provides further guidance, in the applicant's remarks accompanying the amendment adding limitation 1[b]. Appx2941-2943; OB 33-35. Neonode's arguments during the Google IPR are fully consistent, and provide additional guidance. Appx0711-0712, Appx1096-1097 (¶52), Appx2051 (48:2-5), Appx2025-2026, Appx2055-2056 (72:23—73:1-6, 13-16), Appx2119, Appx2123-2124, Appx2237, Appx2289-2290 (¶¶107-109); OB 28-31, 36-38. And, claim 1 as a whole sets bounds on the meaning of limitation 1[b]. OB 27-28, 31-32, 52-53. The intrinsic record forecloses Samsung's "three meanings," and supports Neonode's plain meaning construction. Accordingly, Samsung's assertion that Neonode fails to "show how a skilled artisan could make an informed and confident choice among the various possible meanings" is doubly wrong—first, because it is Samsung's burden to prove indefiniteness, not Neonode's burden to disprove it, *Grace Instrument Indus., LLC v. Chandler Instruments Co.*, 57 F.4th 1001, 1008 (Fed. Cir. 2023); second, because Neonode has shown both here and in the district court that none of Samsung's "three meanings" are viable.

### C. Samsung Fails to Rebut Neonode's Showing that Limitation 1[b] Should be Given a Plain Meaning Construction.

Samsung contends that Neonode proposes a construction here that it did not propose to the district court. That is incorrect. Here, as in district court, Neonode advocates that limitation 1[b] be given a plain meaning construction. Here, as in

district court, Neonode articulates what that plain meaning construction is, in light of the claim as a whole: "the representation consists of only one option for activating one of the one or more functions at any given time." Appx1059.

Samsung complains that Neonode's plain meaning construction "merely replicates the portion of the claim language that is the principal focus of the parties' dispute." But that is because Neonode does not believe that a technical construction of "option" is necessary. Samsung contends that this fails to address the parties' dispute, but the dispute concerns whether the claim is indefinite, and Neonode's argument addresses that dispute.

Samsung also complains that the "one of the one or more functions" portion of Neonode's plain meaning construction fails to resolve the parties' dispute. As discussed in Neonode's Opening Brief, this language flows directly from the claim language reciting "only one option for activating ***the*** function," referring back to "a function" of limitation 1[a]. OB 27-28, 52-53. Samsung does not contest Neonode's showing that "a function" means "one or more functions," so a plain meaning reading of limitation 1[b] yields "the representation consists of only one option for activating one of the one or more functions …."

Samsung next asserts that there is no support for the "at any given time" element of the plain meaning construction. Neonode showed why limitation 1[b]

should be read to include that element. OB 54-55, 58. Beyond a perfunctory dismissal, Samsung fails to address it.

Samsung next asserts some undefined inconsistency because "[t]he applicant made clear that Hirshberg disclosed a multi-function key, while the claimed invention was limited to a multi-step operation for activating a single function." RB 36. But this mangles the claim, mashing together limitations 1[b] and 1[c]. And to the extent that Samsung's argument is intended to address the "at any given time" element of Neonode's proposed construction, Samsung fails to explain how its discussion of "comprising" and "consisting of" does so.

Samsung next contends that "Neonode appears to argue that the functions vary over time," and that "this cannot be right." RB 36. Not quite. What Neonode argues is that the specification discloses an "application-dependent function" (function 21) that enables different functions to be activated depending on what application is currently active, or whether there is any active application running at all. Appx0085 (Fig. 1, element 21), Appx0090 (4:1-4, 13-28); OB 54-55. This as well as the applicant's reliance on element 21 as support for limitation 1[b], Appx2943, shows that the representation presents one option for activating a function ***at any given time*** (e.g., "displaying icons as appropriate for a currently active application."). Appx1062-1063. Consistent with this, during the Google IPR Neonode argued that "while 'a representation can at different times have multiple functions,' at any given

time 'the user is given only one option in terms of what to activate and what option to take.'" Appx2056 (73:1-6, 13-16); OB 30. The point was not that the represented function may vary over time, but that at any given time the user is only given one option of what function to activate by interacting with a particular representation. That is why the plain meaning of limitation 1[b] includes the "at any given time" element.

Samsung also notes that an embodiment teaches that the representations may be printed onto the enclosure of the device. This says nothing about whether a representation may represent one function when a word processing application is active and a different function when a phone application is active, as taught in the specification for the representation of first function 21. Appx0090 (4:4-5, 13-33).

Accordingly, Samsung fails to rebut Neonode's showing that limitation 1[b] should be given a plain meaning construction. Neonode respectfully requests that this Court construe the claim as such and remand to the district court for further proceedings. *See Nevro Corp. v. Boston Scientific Corp.*, 955 F.3d 35, 40, 42 (Fed. Cir. 2020) (construing terms the district court had found indefinite).

### D. Samsung Fails to Rebut Neonode's Showing that the District Court Committed Reversible Error.

#### 1. The District Court Did Not Correctly Apply the Governing Legal Standards.

Samsung fails to rebut Neonode's showing that the district court committed reversible error.

First, Samsung contends that the district court did not place undue weight on the fact that "option" is absent from the specification. The district court's opinion speaks for itself. After twice noting that "the word 'option' does not appear in the specification ....," Appx0024, Appx0029, in the key paragraph providing the court's analysis the district court stated:

> The problem with Neonode's argument is that it is unclear to a POSITA whether the claim term "only one option" refers to either a ***gesture*** or ***function*** (as Samsung asserts) or to ***presenting the user with an icon*** (as Neonode appears to contend). Again, the specification does not define "option." Although the Plaintiff cites the prosecution history for the notion that "option" does not refer to a gesture, the Court finds that it is unclear to a POSITA what the claimed "option" is.

Appx0030 (emphasis in original). The only referenced support for the district court's conclusion that it is "unclear" what "only one option" refers to is the thrice-noted failure of the specification to define "option." The remainder of the court's analysis is either facially incorrect (misattribution to Neonode of an "icons" argument that Neonode never made) or conclusory. Accordingly, the only

reasonable reading of the district court's opinion is that the court gave undue weight to the absence of "option" from the specification.

Samsung criticizes Neonode's reliance on *One-E-Way, Primos,* and *Bancorp*, but its criticisms miss the mark. These cases show that the specification need not expressly recite or define a claim term in order to avoid indefiniteness. Samsung does not appear to contest that point. Accordingly, the district court's focus on the fact that the specification does not contain "option," combined with its failure to provide any other actual rationale for its conclusion, was erroneous.

Moreover, Samsung's effort to distinguish these cases fails. Samsung contends that *One-E Way* and *Primos* are distinguishable because in those cases there was guidance in the specifications of the patents at issue. Yet the same is true here—as Neonode showed in its Opening Brief, the specification provides ***three examples*** of representations of functions that consist of only one option for activating an associated function at any given time, i.e., elements 21-23. Appx0085, Appx0089-0090. Moreover, *One-E Way* found a claim term not indefinite based in part on the prosecution file, which is also highly instructive here. Samsung fails to respond to these points. As to *Bancorp*, Samsung merely asserts that the specification of the '879 Patent permits "no inference about the meaning of 'option,'" again without addressing Neonode's showing that it does. Finally, Samsung does not contest the point for which these cases were cited, *i.e.*, that the

absence of "option" from the specification is not itself fatal to the claim, as the district court appeared to believe. These cases should guide this Court's resolution of the issue here.

Samsung next attacks Neonode's showing that the district court failed to grapple with Neonode's arguments based on the prosecution file in any substantive way. Here Samsung points to the fact that the district court cited some pages of Neonode's claim construction briefs addressing the prosecution file, and summarized portions of the parties' arguments concerning the prosecution file. What Samsung does not point to, because it does not exist, is any explanation in the district court's order as to why the court rejected Neonode's argument and accepted Samsung's. The district court's failure to explain its rationale for rejecting Neonode's showing that the prosecution file resolves any potential ambiguity in the claim language necessitates reversal. *E.g., Nature Simulation Systems Inc. v. Autodesk, Inc.*, 50 F.4th 1358, 1367 (Fed. Cir. 2022); OB 23-24.

Samsung next contends that the district court considered the claim language as a whole. Yet all Samsung can point to is three instances where the district court correctly articulated a pertinent legal standard, and that the court summarized some portions of the parties' arguments. This does not show that the district court considered the claim as a whole. To the contrary, the record shows that the court

considered "option" in isolation, and ignored the context of the surrounding claim language. OB 24-35.

Finally, Samsung contends that the district court did not adopt a "differing interpretations" test. Yet all that Samsung points to is, again, the fact that the court correctly quoted a few cases. It is the district court's ***explanation*** of ***why*** it arrived at its conclusion that matters, and here the court's explanation was: (i) "option" does not appear in the specification, (ii) Neonode purportedly made an "icon" argument that Neonode never actually made, and (iii) there were "three equally competing interpretations of what this claim term means." Appx0029-0031. Reasons (i) and (ii) are clearly inadequate for the reasons addressed above and in Neonode's Opening Brief, OB 20-22, 44-48, which leaves only the court's "three equally competing interpretations" rationale. While the court opined that there was "'no informed and confident choice [that] is available among the[se] contending definitions,'" quoting *Media Rights*, the court never explained how it had arrived at that conclusion, which is incorrect in any event—as Neonode has shown, none of Samsung's three "interpretations" is supported by the intrinsic record. OB 26-44; *supra* 1-8. The district court's failure to perform the analysis required by *Nautilus* and this Court's precedents is further illustrated by the fact that it failed to even address Neonode's claim construction argument because it mistakenly believed that Neonode was arguing that "only one option" referred to presenting the user with an

icon. So all that is left is Samsung's bare assertion of three differing interpretations of the claim language, none of which are supported by the record.

This is materially identical to the situation addressed by this Court in *Nevro*, 955 F.3d 41-42. In *Nevro*, the district court concluded that "configured to" was indefinite because it could plausibly mean either of two different things. This Court rejected such a "differing interpretations" standard, noting that it "would render nearly every claim term indefinite so long as a party could manufacture a plausible construction." *Nevro*, 955 F.3d at 41. This Court then performed the claim construction analysis that the district court had failed to do, construing "configured to" and vacating the district court's judgment of invalidity. *Id.* at 41-42. Here, as in *Nevro*, the district court found claim 1 indefinite because the defendant proposed multiple possible interpretations, but failed to perform the analysis required to determine whether a POSITA would nevertheless grasp the scope of the claim with reasonable certainty. Accordingly, here, as in *Nevro*, this Court should reverse or vacate the district court's incorrect conclusion of indefiniteness.

### 2. Samsung Fails to Rebut Neonode's Showing that the District Court's Erroneous Attribution of an "Icons" Argument to Neonode was Prejudicial.

In its Opening Brief, Neonode showed that the district court concluded that limitation 1[b] is indefinite, in part, because the court thought that Neonode had made an argument that it never made—that "only one option" could refer to

"***presenting** the user with **an icon***." Appx0030 (emphasis in original). Neonode never made this argument, nor would such an argument find support in any of the intrinsic evidence. OB 44-48.

In response, Samsung contends that Neonode "invoked the 'icon' in connection with what may constitute the claimed 'option.'" RB 48. However, all that Samsung points to is some argument at the Markman hearing in which Neonode's counsel referred to "the option" as "the single app that is currently active" and explained to the court how the specification's description of "application dependent function" 21 discloses what is recited in claim 1. Appx0043. Neonode was not arguing that the "only one option" language refers to presenting the user with an icon. To the contrary, Neonode was pointing to the icons of Figure 3 as the ***result*** of activating a function, not as the option for activating a function. This is explicit in the discussion immediately preceding one of Samsung's cites, in which Neonode's counsel explains:

> Figure 3 as the option is act -- yeah, ***as the function 21 is activated***, figure 3 tells you in the specification based on the currently active application, based on that single option that's available, figure 3 will change. Here, it has icon for a certain application but according to the specification, whatever -- if you pick e-mail, you're going to get different icons because that would be the currently active application and the sole option that could be activated by function 21.

Appx0043-0044. So, as Neonode's counsel explained, the icons of Figure 3 are the result of activating a function (such as function 21), they are not the "option" itself. Samsung also cites to Appx1062, but the only reference to an icon on this page is, again, in the context of describing the ***result*** of activating the "application dependent function" associated with representation 21, which will "cause the display to present different sets of icons to the user depending on context, such as whether a currently active application is running." Appx1062. There is no suggestion that the "option" is an icon.

Samsung next argues that "the district court's rejection of an argument Neonode claims it did not make can hardly be error." RB 49. But the district court did not merely "reject" this purported argument—the court ***relied on it*** in concluding that the claim was indefinite. Indeed, the court considered this "problem with Neonode's argument" to be so important that it bolded, italicized and underlined the point. Appx0030 ("The problem with Neonode's argument is that it is unclear to a POSITA whether the claim term "only one option" refers to either a ***gesture*** or ***function*** (as Samsung asserts) or to ***<u>presenting</u> the user with <u>an icon</u>*** (as Neonode appears to contend)"). Moreover, the district court referred to its rejection of Neonode's purported "icons" argument as "critical[]" to its conclusion. Appx0030 ("Critically, the patentee knew how to claim these graphical user interface elements—it called them 'icons.'"). While Samsung attempts to explain away the

district court's explanation of its reasoning, the court's statement of its reason for rejecting the purported "icons" argument is, along with its fixation on the absence of "option" from the specification, the only portion of the "Analysis" section of the court's Order that is not wholly conclusory. The district court's mistaken attribution of this argument to Neonode was erroneous and prejudicial, and, in the context of the court's other errors, requires reversal.

### E. This Court Should Not Disturb the District Court's Holding that "Gliding ... Away" is Not Indefinite.

#### 1. The Claims, Specification, and Prosecution File Clearly Inform a POSITA as to the Meaning of "Gliding".

The district court rejected Samsung's argument that "gliding," in the claim phrases "the object gliding along the touch sensitive area" and "gliding the object along the touch sensitive area," renders claim 1 indefinite. The court held that "[t]he claims use 'gliding' according to its ordinary meaning: a smooth, continuous movement across or along a surface … not including 'dragging,' 'flicking,' or a drag and drop operation." Appx0034. Samsung contends that the intrinsic and extrinsic evidence supplies no objective criteria for distinguishing "gliding" from a "flick" or a "drag," and that therefore the court erred. This argument is meritless.

A term is not indefinite simply because it cannot be bounded with absolute precision. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.,* 844 F.3d 1370, 1377 (Fed. Cir. 2017).

Here, the evidence of record indicates that the claims use "gliding" according to its ordinary meaning: a smooth, continuous movement across or along a surface. Appx1103-1104 (¶¶67-69), Appx2219, Appx2225, Appx2230, Appx2235. This does not include a "flicking" gesture, which is a sharp, quick movement. Appx1103-1104 (¶¶67-69), Appx2218, Appx2223-2224, Appx2229, Appx2234. A POSITA would also understand that "gliding" does not include a "drag"/"drag-and-drop" gesture, which connotes a logical and (typically) visual dragging of a target across a display in order to drop it into a specific area. Appx1104 (¶70). Moreover, interpreting "gliding" to include a traditional drag-and-drop operation would be inconsistent with limitation 1[d]—"wherein the representation of the function is not relocated or duplicated during the gliding"—which expressly excludes a typical drag-and-drop.

The specification provides further guidance, describing the gesture used to activate functions 21-23 as follows:

> FIG. 2 shows that any one of these three functions 21, 22, 23 can be activated when the touch sensitive area 1 detects a movement of an object 4 with its starting point A within the representation of a function on the menu area 2 and with a direction B from the menu area 2 to the display area 3.

Appx0090. Figure 2 illustrates the movement required to activate the functions:




*Fig. 2.*

Appx0085. As shown by the figure, the user's finger remains on the display from starting point A to endpoint B. This is the activation gesture—"gliding along the touch sensitive area"—that is recited in limitation 1[c]. This informs a POSITA that the "gliding" gesture recited in the claims is a continuous movement across an appreciable portion of the display. Appx1105 (¶73). This is consistent with the plain meaning of "gliding," and is more than sufficient to distinguish a "flick." Appx1105 (¶73). The applicant pointed to this portion of the specification and Figure 2 to support the amendment adding the "gliding" language to the claims. Appx3161. In addition, nothing in the specification suggests that the representations of functions 21-23 are "dragged" into the display area and then "dropped," as in a conventional drag-and-drop operation. Appx1105-1106 (¶74).

The prosecution file provides further guidance. At one point, claim 1 recited "***moving*** in a direction from a starting point that is the representation [of a function] ... to said display area ...." Appx3242. To demonstrate the novelty of the invention, the applicant provided the Examiner with a link to Neonode's promotional video for a commercial embodiment, the Neonode N2 phone. Appx3255-3256, Appx2311 (N2-Advertisement-Video). The video showed a user activating functions by touching a thumb to locations that map to representations 21-23 and then smoothly moving the thumb from the icon upward along the display:




Appx2311 (screenshots from 00:26-00:27). No touched icon moves with the user's thumb, as would typically be the case in a drag-and-drop operation. And, as shown by the video, the movement is a smooth glide, not a "flick." Appx1106-1107 (¶¶75-76).

After reviewing the video, the examiner stated that he could "now see the difference between the prior art of record and the present application," but that the claims were "still too broad to suggest without research what was shown in the video demonstration." Appx3233. In response, the applicant narrowed the claim from

"moving" to a specific type of movement: "gliding ... away from the location [of the representation of a function]." Appx3140. The applicant explained that "[t]he subject claimed invention teaches 'rubbing', 'touch-and-glide' movements to operate a user interface, whereby the thumb touches a touch-sensitive screen and rubs, or glides, along the screen without lifting the thumb," as illustrated in Figure 2. Appx3160-3161. Subsequently, the applicant again equated the "gliding" motion with swiping or rubbing, stating that the gesture is conducted "without lifting the finger" from the display. Appx3083.

In response to a subsequent rejection over the Hoshino reference, the applicant distinguished the claimed "gliding" gesture from a "conventional" drag-and-drop operation: "Hoshino does not teach gliding a finger away from an icon. Instead, Hoshino teaches a drag-and-drop operation for moving an icon." Appx2985 (emphasis in original). In a table, the applicant summarized the distinction between Hoshino's "conventional" "drag-and-drop" "operation" and the invention's "novel" "touch-and-glide" operation:

| Some distinctions between claimed invention and Hoshino | | |
|---|---|---|
| | **Claimed invention** | **Hoshino** |
| **Objective** | Novel touch-and-glide user interface operation | Discriminate between two conventional operations; namely, (1) touch, and (2) drag-and-drop |

Appx2984 (annotations added).

Samsung ignores all of this, instead focusing on a different argument distinguishing Hoshino on a different ground (the sequence of the activation operation). This does Samsung no good, because when an applicant distinguishes a reference on multiple grounds, they are all material for claim construction. *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013). Samsung does not dispute that one of the grounds on which the applicant distinguished Hoshino was that it used a drag-and-drop operation. Accordingly, the prosecution file informs a POSITA that the "gliding" operation recited in the claims does not include a drag-and-drop operation. *E.g.*, *MasterMine Software, Inc. v. Microsoft Corp.,* 874 F.3d 1307, 1311-12 (Fed. Cir. 2017).

Samsung next contends that "Neonode sought an otherwise-unbounded construction that excludes only 'a drag and drop operation.'" RB 58. That is incorrect; in fact, Neonode argued that the plain meaning of "gliding" as well as the guidance provided by the specification and the prosecution file indicates that the term as used in the claims excludes both a "flicking" gesture and a "drag"/"drag-and-drop" gesture. Appx1066-1070.

Samsung also attempts to manufacture an ambiguity by way of a convoluted extrapolation from the applicant's "order of activation" argument distinguishing Hoshino, the end result of which is that a "glide" purportedly equals a "drag." Samsung's theory is predicated on the following table, distinguishing Hoshino:




Function activation operation of claimed invention vs. that of Hoshino

However, the applicant's argument here has nothing to do with whether a "glide" is a "drag." The point of this table was that the claimed invention activated a function ***after*** moving away from a representation of the function, whereas Hoshino taught activating a function ***before*** moving. The fact that the applicant used "glide" to refer to the movement is immaterial, because the applicant here was distinguishing Hoshino on a different ground than the type of movement away from the touched location. The applicant emphasized this point in the table listing distinctions between the claimed invention and Hoshino:

| Some distinctions between claimed invention and Hoshino | | |
|---|---|---|
| | **Claimed invention** | **Hoshino** |
| **Objective** | Novel touch-and-glide user interface operation | Discriminate between two conventional operations; namely, (1) touch, and (2) drag-and-drop |
| **Hardware** | Touch screen | Touch screen with pressure sensor |
| **Function Activation** | In response to both steps of a multi-step operation; namely, (1) touch, followed by (2) a glide | In response to hard touch |

Appx2984 (annotations added). Accordingly, Samsung fails to prove that the applicant equated "gliding" with "dragging."

Samsung also asserts that the inventor equated "gliding" with "dragging" and "sliding." Here Samsung points to the testimony of Magnus Goertz, the inventor, taken ten years after prosecution of the application ended. Mr. Goertz was not asked whether a "glide" was equivalent to a "drag"; rather, the colloquy to which Samsung cites pertained to a design document for an early version of the Neonode phone. Appx2679. "[I]nventor testimony, obtained in the context of litigation, should not be used to invalidate issued claims [as indefinite]." *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1377-80 (Fed. Cir. 2000). Mr. Goertz's testimony does not invalidate the claims.

#### 2. Neonode's Arguments in the IPRs Were Entirely Consistent with the Intrinsic Record.

Samsung contends that Neonode's statements in the IPRs render the claims indefinite, purportedly because Neonode failed to define precise parameters for what constitutes a "glide" as opposed to a "flick" or a "drag-and-drop." But Neonode is not required to do so in order to avoid indefiniteness. *Sonix*, 844 F.3d at 1377.

In any event, Neonode's IPR arguments were consistent with the plain meaning of "gliding" and with the rest of the intrinsic record. Samsung first points to a snippet from the Google IPR trial in which Neonode's counsel acknowledged that "you have to keep track of the characteristics" differentiating a glide from a flick. RB 58. This is disingenuous on two counts. First, Neonode's IPR counsel was explaining that "in order to practice the claim … something" would have to keep

track of the characteristics of the input gesture to determine whether it was a glide. Appx2052. Neonode's counsel was not stating that such tracking was required in order to understand the claim. Second, later at the same trial Neonode's counsel explained:

> [Y]ou actually don't have to delineate the actual distinction between a flick and a glide. This is not the case where we have a specific movement with a given characteristic.

Appx2053. In other words, Neonode argued that a precise delineation between a flick and a glide is not required. Exactly as Neonode argues here.

Moreover, Neonode explained in the IPR and in district court what those differentiating characteristics were: a smooth, continuous movement across or along a surface ("gliding") as opposed to a sharp, quick movement (a flick). Appx1066-1074, Appx1103-1104 (¶¶67-68), Appx1115-1116 (¶95), Appx2017-2018, Appx2083-2088, Appx2107, Appx2218-2219, Appx2223-2225, Appx2229-2230, Appx2234-2235, Appx2273-2282 (¶¶77-91), Appx2620-2621, Appx3546-3547. Samsung does not dispute that these characteristics differentiate a "glide" from a "flick."

Similarly, in IPR2021-00144 ("the Samsung IPR"), Neonode and Dr. Rosenberg repeatedly explained what distinguished the claimed "gliding" from the "drag-and-drop" operation of Samsung's Hirayama reference. Appx1110-1113 (¶¶85-91), Appx1115-1116 (¶95), Appx2348-2349, Appx2414-2422 (¶¶50-67),

Appx2465, Appx2467. And at the Samsung IPR trial, Neonode's counsel explained that "gliding" could be distinguished from a drag-and-drop both in terms of the nature of the movement and in terms of the operation performed by the computer as a result of the movement. Appx2491-2493, Appx2536, Appx2541, Appx2546-2547. Samsung's assertion that a POSITA would be confused by this is meritless. Appx1113 (¶91).

#### 3. The Record Supports the District Court's "Plain Meaning" Construction.

Samsung contends that there are two problems with the district court's construction of "gliding." Both arguments fail.

First, Samsung contends that the dictionary definitions proffered by Neonode and endorsed by Dr. Rosenberg are "not instructive to a skilled artisan in the relevant art in 2002." RB 60. Samsung's argument is predicated on the assumption that a POSITA would attach a different meaning or no meaning at all to "gliding" independent of the specification. But Samsung submitted no evidence to support this assumption, while Neonode submitted the declaration testimony of Dr. Rosenberg explaining exactly how a POSITA would understand the term. Appx1103-1119 (¶¶66-104). It is well established that a general dictionary definition may be relevant to the construction of a term that is not a technical term of art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006). That is exactly the situation at hand—neither Neonode nor

Samsung contends that "gliding … away" has some technical meaning in the computer science art. Accordingly, Samsung's first contention fails.

Second, Samsung recapitulates its complaint that Neonode "has failed to put reasonably certain boundaries on the claims." RB 61. But "gliding" does have reasonably certain boundaries, as the district court found. In any event, it is Samsung's burden to prove indefiniteness, not Neonode's burden to disprove it. *Grace*, 57 F.4th at 1008. Samsung fails to carry its burden.

Finally, Samsung also contends that the examiner's and PTAB judges' understanding of the "gliding … away" claims is not "determinative." However, the examiner's statements are part of the prosecution file, and the PTAB judges' statements are part of the administrative record, and therefore supply guidance to a POSITA. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360-61 (Fed. Cir. 2017). Here, those statements are consistent with Neonode's proposed construction, and provide further grounding in the intrinsic record for the district court's conclusion that the term is not indefinite.

In sum, "gliding" is sufficiently clear as to pass muster under *Nautilus* and *Sonix*. The district court's construction of the term was correct.

## II. <u>CONCLUSION</u>

This Court should (i) reverse the district court's conclusion that limitation 1[b] renders claim 1 indefinite, adopt Neonode's "plain meaning" construction and

remand for further proceedings, and (ii) affirm the district court's construction of "gliding."

Dated: April 1, 2024

/s/ Philip Graves
Philip Graves
Greer Shaw
GRAVES & SHAW LLP
355 S. Grand Ave., Suite 2450
Los Angeles, CA 90071ff
(213) 204-5101

Brian D. Melton
Bryce Barcelo
Rocco Magni
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 653-7825

Kalpana Srinivasan
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100

*Counsel for Appellant*
*NEONODE SMARTPHONE LLC*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[**X**] this motion contains **6,999** words.

[ ] this motion uses a monospaced type and contains [state the number of] lines of text.

2. This motion complies with the typeface and type style requirements because:

[**X**] this motion has been prepared in a proportionally spaced typeface using [**Microsoft Word]** in [**14-Point Times New Roman]**; or

[ ] this motion has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Dated: April 1, 2024

/s/ Philip Graves

Philip Graves
Greer Shaw
GRAVES & SHAW LLP
355 S. Grand Ave., Suite 2450
Los Angeles, CA 90071ff
(213) 204-5101

Brian D. Melton
Bryce Barcelo
Rocco Magni
SUSMAN GODFREY L.L.P.

1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 653-7825

Kalpana Srinivasan
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100

*Counsel for Appellant NEONODE SMARTPHONE LLC*