NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NEONODE SMARTPHONE LLC,**
*Plaintiff-Appellant*

**v.**

**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,**
*Defendants-Appellees*

---

2023-2304

---

Appeal from the United States District Court for the Western District of Texas in No. 6:20-cv-00507-ADA, Judge Alan D. Albright.

---

Decided: August 20, 2024

---

PHILIP GRAVES, Graves & Shaw LLP, Los Angeles, CA, argued for plaintiff-appellant. Also represented by GREER N. SHAW; BRYCE BARCELO, ROCCO MAGNI, BRIAN MELTON, Susman Godfrey LLP, Houston, TX; KALPANA SRINIVASAN, Los Angeles, CA.

STANLEY JOSEPH PANIKOWSKI, III, DLA Piper US LLP, San Diego, CA, argued for defendants-appellees. Also represented by TIFFANY CAROL MILLER; BRIAN K. ERICKSON,

Austin, TX; MARK D. FOWLER, Palo Alto, CA; JESSICA HANNAH, San Francisco, CA.

---

Before LOURIE, PROST, and STARK, *Circuit Judges*.

PROST, *Circuit Judge*.

Neonode Smartphone LLC ("Neonode") sued Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") for infringement of U.S. Patent No. 8,095,879 ("the '879 patent") in the U.S. District Court for the Western District of Texas. After claim-construction briefing, the district court concluded that claim 1 of the '879 patent is invalid as indefinite. The district court entered final judgment against Neonode, and Neonode appealed to this court. For the reasons that follow, we disagree with the district court's conclusion that claim 1 of the '879 patent is indefinite. We thus reverse and remand for further proceedings.

## BACKGROUND

### I

The '879 patent "relates to a user interface for a mobile handheld computer unit." '879 patent Abstract. Figure 1 illustrates one embodiment of a mobile handheld computer unit:




Fig. 1.

*Id.* at Fig. 1. It shows a "touch sensitive area 1, which is divided into a menu area 2 and a display area 3." *Id.* at col. 3 ll. 53–54. Menu area 2 contains "a representation of a first 21, a second 22[,] and a third 23 predefined function." *Id.* at col. 4 ll. 2–3.

These representations are involved in the activation of functions 21, 22, and 23. The specification explains that these functions can be activated with a multi-step operation that the parties call a touch-and-glide operation. First, an object (like a finger) touches the mobile device "within

the representation of a function on the menu area 2." *Id.* at col. 4 ll. 9–10. Second, the object moves from "the menu area 2 to the display area 3." *Id.* at col. 4 l. 11.

Figure 3 illustrates a possible result of activating function 21:




Fig. 3.

*Id.* at Fig. 3. This figure shows various icons displayed after the activation of function 21 in the depicted embodiment. These icons are not static but rather can change "depending on the current active application." *Id.* at col. 4 ll. 14–15. Put differently, activating function 21 can produce different results at different times, depending on what a user is doing on the mobile device.

Claim 1, the sole independent claim, recites:

> 1. A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:
>
> > a touch sensitive area in which a representation of a function is provided, *wherein the representation consists of only one option for activating the function* and wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object *gliding along the touch sensitive area away* from the touched location, wherein the representation of the function is not relocated or duplicated during the gliding.

*Id.* at claim 1 (emphases added).

II

At claim construction, the district court was asked to construe the limitations "wherein the representation consists of only one option for activating the function" and "gliding . . . away" in claim 1. J.A. 23, 31. The district court determined that the limitation "wherein the representation consists of only one option for activating the function" renders claim 1 indefinite. J.A. 31. The court specifically took issue with the word "option," noting that "the word 'option' does not appear in the specification (much less the broader phrase 'only one option for activating the function')." J.A. 29. In assessing what "option" means, the district court noted that "it is unclear to a [skilled artisan] whether the claim term 'only one option' refers to either a gesture or function (as Samsung asserts) or to presenting the user with an icon (as Neonode appears to contend)." J.A. 30 (emphases omitted). The district court, accepting

Samsung's position, found itself presented with "three equally competing interpretations of what this claim term means." J.A. 31. Unable to choose among these interpretations, the district court held that claim 1 is indefinite. Because all other claims in the '879 patent depend from claim 1, the district court also concluded that all dependent claims are invalid as indefinite.

As to the "gliding . . . away" limitation, the district court construed this term according to its plain and ordinary meaning, with the caveat that the plain and ordinary meaning did "not includ[e] dragging, flicking, or a drag and drop operation." J.A. 31. The district court based its construction on the scope of the claim that Neonode distinguished "throughout the prosecution history" and in the '879 patent inter partes reviews ("IPRs"). J.A. 34. The district court thereafter entered final judgment against Neonode on the basis that "all claims of the '879 patent are invalid as indefinite under 35 U.S.C. § 112, ¶ 2." J.A. 35.

Neonode timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's ultimate conclusion of indefiniteness and any determinations based on intrinsic evidence de novo and any underlying factual determinations for clear error. *Cox Commc'ns, Inc. v. Sprint Commc'n Co.*, 838 F.3d 1224, 1228 (Fed. Cir. 2016). Section 112 requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).

Neonode argues that the district court erred by concluding that the "wherein the representation consists of only one option for activating the function" limitation renders claim 1 indefinite. Samsung disagrees, arguing that:

(1) the district court properly evaluated indefiniteness with respect to the "only one option" language; and (2) as an alternative ground for affirmance, the "gliding . . . away" limitation likewise renders claim 1 indefinite (contrary to the district court's conclusion). We address the district court's treatment of each limitation in turn.

I

We start with the district court's analysis of the "wherein the representation consists of only one option for activating the function" limitation. Ultimately, we conclude that the district court erred by concluding that this limitation renders claim 1 indefinite. We first explain our construction of the limitation and then explain why we find Samsung's counterarguments unpersuasive.

A

When addressing indefiniteness, applying traditional claim-construction principles "is a helpful tool." *Cox Commc'ns*, 838 F.3d at 1232. And here, these traditional principles provide "reasonable certainty" about claim scope. *See Nautilus*, 572 U.S. at 910. We interpret claims by looking to the claim language, the specification, the prosecution history, and, where relevant, extrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). "The prosecution history, in particular, may be critical in interpreting disputed claim terms." *Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1340 (Fed. Cir. 2020) (cleaned up).

Starting with the claim language, we recognize that, although the claim language alone does not resolve our inquiry, it provides helpful information on what the recited "option" is not. Claim 1 distinguishes its "option" from the representation and the function itself: the representation "consists of" the option, and the option is "for activating" the function. The option is also not *how* the function is activated. That process is described as "a multi-step

operation comprising" what the parties call a touch-and-glide operation.

What exactly the claimed "option" is, though, is not directly indicated by the claim language. The specification likewise does not definitively answer this question; as the district court recognized, the specification does not use the word "option." Rather, the meaning of "option," and the reason for its use, becomes apparent from the prosecution history.

During prosecution, the examiner rejected a previous version of claim 1 over a prior-art reference called Hirshberg.[1] The main focus in prosecution was on Hirshberg's multifunction keys (which, for our purposes, are similar to the representations in Figure 1 of the '879 patent). Hirshberg discloses a method for activating multifunction keys that involves, in simplified terms, touching an object to a key, moving the object away from the key, and determining what function to activate based on the direction of motion. J.A. 1255 ¶ [0027]. Thus, a user could activate multiple functions from each key. In one example from Hirshberg, touching a key and moving upward will display the letter "H," while touching a key and moving left will display the letter "G." J.A. 1243 Fig. 2a. Hirshberg refers to the association between one key and multiple functions as there being "options" for what a user can do. Specifically, Hirschberg references "the basic princip[le] of having [a] soft key selected by the initial contact point on any location on the key then selecting one of several *options*," noting that a skilled artisan can modify "the numbers of functions" associated with a key. J.A. 1259 ¶ [0082] (emphasis added). Thus, in Hirshberg, as relevant here, "option"

---

[1] U.S. Patent App. Pub. No. 2002/0027549 ("Hirshberg"). J.A. 1241–60.

refers to the number of functions a user can activate from a given key.

The examiner rejected the previous version of claim 1 based on Hirshberg's multi-function keys. The examiner read Hirshberg "as teaching a multi-step operation comprising an object touching a corresponding location and then the object gliding along the touch sensitive area away from the touched location." J.A. 2941. To the examiner, Hirshberg taught the claimed touch-and-glide operation in the previous version of claim 1. Neonode overcame this rejection by amending claim 1 to include the "wherein the representation consists of only one option for activating the function" limitation. As Neonode explained, "[i]n distinction" to Hirshberg, "the claimed invention uses a multi-step touch-and-glide operation for representations that consist of only one option for activating a function." J.A. 2942 (emphasis omitted). Thus, unlike in Hirshberg, where a user had multiple options for what function to activate, claim 1 gives the user "only one option" for what function to activate. The added limitation, which takes its wording from Hirshberg, serves to limit the number of functions a user can activate from a given representation to one.

The context of this amendment over Hirshberg provides sufficient clarity for us to construe the "only one option" language. *E.g.*, *Univ. of Mass. v. L'Oréal S.A.*, 36 F.4th 1374, 1382–83 (Fed. Cir. 2022) (using the circumstances of a claim amendment that overcame a prior-art rejection to construe a claim limitation). The prosecution history indicates that, for a given representation, the *number of functions* that may be activated is limited to "only one option"; or, to put it more simply, one.

This understanding harmonizes with the specification. For example, the specification includes an embodiment containing "a menu area 2," which "is adapted to present a representation of a first 21, a second 22[,] and a third 23 predefined function." '879 patent col. 4 ll. 1–3. And the

specification states that "any one of these three functions 21, 22, 23 can be activated" when an object touches the corresponding representation and moves away from menu area 2 to display area 3. *Id.* at col. 4 ll. 7–11. In one embodiment, "if the first function 21 is activated, then the display area 3 is adapted to display icons . . . representing services or functions depending on the current active application." *Id.* at col. 4 ll. 12–15.

This embodiment shows only one function, rather than multiple functions, being activated by interacting with a given representation. What this embodiment also reveals is that the single function activated by interacting with a given representation can change over time. This change over time happens when the user changes applications (such as between a texting and internet application). Both the specification and a dependent claim show that the function activated from a given representation can be different for different applications (but not for the same application). *Id.* at col. 4 ll. 14–15 ("depending on the current active application"); *id.* at claim 2 ("wherein the function, when activated, causes the user interface to display icons representing different services or settings *for a currently active application*" (emphasis added)).[2]

The intrinsic record resolves our inquiry. We thus construe "wherein the representation consists of only one option for activating the function" as: wherein the representation consists of only one option for what function to activate at a given time (where a given time means the currently active application).[3]

---

[2] By focusing on this embodiment, we do not mean to suggest that the claims are limited to it.

[3] The district court may need to further refine this construction on remand, consistent with our holding here.

B

Samsung primarily defends the district court's conclusion that claim 1 is indefinite by asserting that "wherein the representation consists of only one option for activating the function" has three possible meanings, with no way to choose among them. Samsung's first proposed meaning is that "[t]he representation represents a single function and there is only a single option to activate that function (e.g., only one specific input gesture will activate that function)." J.A. 24 (emphasis omitted). Samsung's second proposed meaning is that "[t]he representation may represent multiple functions but there is only a single option to activate one particular function (e.g., only one specific input gesture will activate one function, but a different input gesture activates a second function)." J.A. 24 (emphasis omitted). Samsung's third proposed meaning is that "[t]he representation represents a single function and the claim allows multiple options to activate that function (e.g., any input gesture will activate that function)." J.A. 24 (emphasis omitted).

Initially, Samsung cannot establish indefiniteness by "merely identify[ing] different ways one could interpret" the "only one option" limitation. *See ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1351 (Fed. Cir. 2022). "Such a test would render nearly every claim term indefinite so long as a party could manufacture a plausible construction." *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 41 (Fed. Cir. 2020). And Samsung's meanings are not all plausible.

We can quickly dispose of Samsung's second and third proposed meanings as inconsistent with the intrinsic record. Samsung's second meaning, which allows multiple

---

*In re Papst Licensing Digital Camera Pat. Litig.*, 778 F.3d 1255, 1261 (Fed. Cir. 2015).

functions to be activated from the same representation, is inconsistent with Neonode's amendment over Hirshberg. Neonode expressly distinguished claim 1 from Hirshberg's multi-function keys, and Samsung's second proposed meaning reads on Hirshberg's multifunction keys. Samsung's third meaning, which allows "any input gesture" to activate a function, is inconsistent with claim 1 as a whole. Claim 1 specifies that a touch-and-glide gesture activates the function, not any gesture.

Samsung's first proposed meaning is the closest to the construction we adopt and is the most plausible, at least to the extent that it reflects a correspondence between one representation and only one function. Two refinements to Samsung's first proposed meaning, however, are necessary. First, the single function corresponding to a representation can change over time (i.e., depending on the currently active application). Second, to the extent Samsung's construction could be so read, the option is *not* the claimed touch-and-glide gesture; rather, it is the number of functions that may be activated from a given representation (here, only one).[4] The district court thus erred by accepting Samsung's three-competing-meanings argument.

Samsung also argues that Neonode has made inconsistent arguments both in the '879 patent IPRs and during the district court litigation. According to Samsung, Neonode's inconsistent statements about the meaning of "option" in claim 1 undermine any clarity that may come from the Hirshberg amendment.

While we disagree with Samsung, we do note that Neonode's statements, in isolation, introduce some confusion into the record. For example, during one IPR, Neonode

[4] We understand the "only one specific input gesture" in Samsung's first proposed meaning to refer to the claimed touch-and-glide gesture.

stated that it was "not proposing that the representation of a function can only be activated with one gesture." J.A. 740. And before the district court, Neonode stated that "[t]he language does not limit the number of functions that may be represented, nor does it limit the ways in which to activate the function." J.A. 3539. Further, during the claim-construction hearing, when asked to define "option," Neonode responded that "[t]he option is the single app that is currently active." J.A. 43.[5]

These isolated statements, however, do not suffice to establish indefiniteness. Neonode's other descriptions of claim 1's scope conform to the construction it has advanced and the construction we adopt today. *E.g.*, J.A. 745 ("The point is, at any given time, the user is given only one option in terms of what gesture to put in and what action to take."); J.A. 745 ("You swipe, the device activates what it activates."). While Neonode's statements in the IPRs are on equal footing with Neonode's statements to the examiner, *Sequoia Tech., LLC v. Dell, Inc.*, 66 F.4th 1317, 1327 (Fed. Cir. 2023), Samsung's position improperly elevates the contextless, isolated meaning of a small snippet in the prosecution history above the discernable meaning gleaned from examining the intrinsic record as a whole. *See Univ. of Mass.*, 36 F.4th at 1384 (noting that a "bare statement made after allowance in the [patent's] prosecution history does not provide a sufficient reason to adopt a different construction from the one clearly indicated by the rest of the prosecution history (and specification)"). Understood in its entire context, the prosecution history establishes a reasonably certain boundary for the meaning of the "only one option" language: that it limits how many functions can be

---

[5] The lack of precision in some of Neonode's statements may have led to the district court's misapprehension that Neonode argued "option" to mean "presenting the user with an icon." J.A. 30 (emphasis omitted).

activated from a given representation to one (with the caveat that this one function can change over time, depending on the currently active application).

## II

Samsung argues, as an alternative ground for affirmance, that the term "gliding . . . away" is not susceptible to a definite construction and thus renders claim 1 invalid. We disagree. The district court's construction of the term, which closely tracks the construction we affirmed in a companion case, *Google LLC v. Neonode Smartphone LLC*, No. 23-1638, 2024 WL 3451831, at *2–4 (Fed. Cir. July 18, 2024), provides "reasonable certainty" to a skilled artisan about whether an accused device might fall within claim 1's scope. *See Nautilus*, 572 U.S. at 910. On this record, Samsung has not established that claim 1's "gliding . . . away" limitation creates an "innovation-discouraging 'zone of uncertainty'" about infringement. *Id.* at 911 (quoting *Union Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)). We thus affirm the district court's conclusion that Samsung did not establish that the "gliding . . . away" limitation renders claim 1 indefinite.

## CONCLUSION

We have considered Samsung's remaining arguments and find them unpersuasive. The district court erred in concluding that the "wherein the representation consists of only one option for activating the function" language renders claim 1 indefinite. We reverse and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED**

## COSTS

Costs to Neonode.